Trowbridge *v.* Chapin.

TROWBRIDGE *vs.* CHAPIN.

In order to charge a common carrier with the loss of property, it must be shown that it was delivered to him, or to his agent, for transportation.

The common hands or crew of a vessel, have no general authority, as agents of the owners, to receive goods for transportation.

Where, in an action against the owner of a steamboat, as a common carrier, it was proved that it was the duty of the clerk of such steamboat, to receive freight for transportation, and property having been taken on board such boat when lying at the wharf, by a porter, was left in a place pointed out, by a person on board, whose appearance, and employment, indicated that he was a common laborer, and no enquiry was made by the porter, either as to the authority of such person to receive the property, or whether there was, or was not, any other person on board said steamboat, who had such authority; it was held, that there was not sufficient evidence of a delivery, to render the owner liable for the loss of said property.

THIS was an action on the case, for negligence, on the part of the defendants, in the transportation, and delivery, of

certain goods belonging to the plaintiff. The cause was tried on the general issue, at New Haven, October term, 1854.

On the trial, it was admitted that the defendant was the owner of the steamer called the Traveller, and as such, a common carrier between the cities of New York and New Haven.

In support of the plaintiff's claim, the following testimony was offered: The plaintiff testified, that, in the month of August, 1851, he left in the possession of Mr. Bailey, the keeper of a boarding-house in the city of Brooklyn, two trunks, containing wearing apparel, and other articles, of the value of two hundred and six dollars, and requested said Bailey to send the mto New Haven. Bailey testified, that, on the seventh of August, he attached to the cover of each trunk a card, directed to the plaintiff, at New Haven, and by a written order, requested one James H. Swain, the driver of an express wagon, to take them to the New Haven steamboat.

James H. Swain, of Brooklyn, testified as follows: " In the summer of 1851, I was in the express business, and received an order, on the seventh of August, to get two trunks, and place them on the New Haven steamboat. I received the trunks; both were marked, E. Trowbridge, Green street, New Haven. I took them over to New York by the ferry-boat. It was nine, or half-past nine o'clock, in the morning. when I got to the steamboat. I got out of the ferry-boat, and went down to the pier. I then ascertained that the steamboat Traveller was lying at the pier. I commenced unloading the trunks, and putting them on board, with the help of my boy. We carried one of the trunks on board, and saw a man at work in the boat, and one of us called his attention to us. We asked him where we should put the trunks. He indicated a certain spot on the boat, and he pointed his finger to a spot, and told us to put them there, and we placed the trunks there and left the boat. We went

on board of the boat, and said, as usual, Here is a couple of trunks to go to New Haven, where shall we put them? 1 read the name, Traveller, on the paddle-boxes. It was a plain sign. I had been in the habit of going to that boat. I crossed the Williamsburg ferry four times a day. The place where the New Haven boat lay, was contiguous to where the ferry-boat stopped, only one pier intervening. There is not a possibility of a doubt, that I put the trunks upon the Traveller. I had before put trunks upon that boat. I took the same course, then, as I did this time. I saw no person on the boat but the man I have mentioned, and no one on the dock."

On cross-examination, he testified as follows : " The man I saw, stood a little back of the paddle-boxes. The paddle-boxes are about midships. He stood aft of the paddle-boxes in the gangway. I brought the trunks on a wagon or cart, which stood, I presume, about opposite the gangway. We got as near as we could, to the place where we were going to put the trunks, before taking the trunks out. I am in the habit of going to the steamboat. Sometimes there was a change in the place where the boat lay ; sometimes she lay on one side, and sometimes on the other side of the slip, but I am not positive about that. I am sure that this was the New Haven boat. The man I saw was sweeping or washing the boat out. I should think he had been washing the decks, from his appearance; he was wet. I was on board the boat afterward, and had some conversation with captain Bownes, but I did not recognize him then. Mr. Bailey was present. I did not tell the captain, that it was another boat that I put the trunks aboard of. The man was barefooted, and had a shirt and pantaloons and hat on, and that is all. The color of his dress was white. I have never seen him since. I did not have to enquire where the boat was, and I did not tell captain Bownes that I so enquired. I saw no other trunks lying where I put these, nor any other freight there. I have taken trunks to this boat before, without passengers with them. The orders were for me to take the trunks to the

New Haven boat, and I did so. The passengers did not go with me. I never took anything but trunks there, that I recollect, but I might have done so and not recollect it. We generally put them down in the after gangway, by the saloon, and called the attention of the waiters to them, and we took no checks for them. I took no receipts for these two trunks, nor checks. I don't know whether those trunks I have taken before, were for freight, or were the trunks of passengers. I saw the captain, as I said, with Bailey, at the boat. I don't distinctly recollect what passed between myself and the captain, that day; he told me that I didn't put them on board, and I said that I did, or to that effect. I assisted in carrying both trunks on board. I assisted the boy. The slip faces south. I think the steamboat lay on the west side of the slip. I am not positive of this, but I know the boat was the Traveller."

Jas. A. Smith testified as follows: " In the year 1851, I drove an express for Fairfield & Swain. We received an order to go to South Eighth street, and take two trunks over to the New Haven steamboat. We took the trunks over to New York on the ferry. We stopped on the pier and unstrapped, and took out the trunks and put them on board. A hand was standing there, and I asked him if it was the New Haven boat, (I knew it was,) and he said that it was. I asked him where we should put the trunks, and he said, " there;" and we put one trunk there, and we went out and took the other trunk and put it aboard also. The wagon was standing on the bridge. We put the last trunk on top, or along side of, the other trunk. I asked the man if they would be safe there, and he said that they would. I saw the name, Traveller, on the paddle-boxes. The steamboat lay on the right hand, as you go down the pier. She was on the right hand, as we went on the pier. I was familiar with the location of that steamboat. I had been in that business one and one-half years. I had taken trunks on board that boat before, and always took them aboard, and gave them into

the care of a hand.   I saw no one, but the man I mentioned, on the boat.   No one appeared to have anything to do with the boat, but that man."

On cross-examination, he testified as follows: " I have taken trunks and packages for New Haven, to that steamboat. We never took a receipt for anything, before 1852.   The man appeared to be about five feet six or eight inches in height.   He was dressed, with his hat on.   It was a straw hat, but I am not certain about that.   He had also a shirt and pantaloons on, and his pantaloons were rolled up.   He had no shoes or stockings on.   He had a broom in his hand. I have never seen him since."

In support of the claim of the defendant, that there had been no delivery of the plaintiff's goods to him, he introduced the following witnesses:

Washington Webb testified as follows: " I have been in the express business, for the last twelve years.   I am in Adams & Co's agency here.   We never ship any goods here without taking a receipt for them.   I never saw freight delivered to the boats at New York, without there being a man to receive it, and a receipt given for it.   That was the custom in New York, as far as I know anything about it, before the railroad commenced.   Here, when we ship goods in the steamboat, we always take a receipt at the boat.   The carman in New York would not deliver goods at a steamboat, without taking a receipt.   If a box comes for New Haven, and is heavy, we should send it by an agent to the steamboat, and a receipt for him to take of the boat."

On cross-examination, he testified: " I was never engaged in shipping goods at New York, by the New Haven steamboats.   Four or five years ago, I was in New York a good deal, on express business.   We took no receipts then, because we had a man of our own to take charge of the goods. Now, when we send a messenger with the goods, he takes a way-bill.   I know nothing of receipts being given for trunks, brought to the New Haven boat in New York, before 1852."

John Saxton, of New York, testified as follows: "In 1851, I attended steamboats. I was, and am, a steamboat agent. I had charge of the Traveller's down freight, to be delivered in New York. The arrangements, and orders, of the directors of the boat were, to put the goods in the charge of the clerk of the boat, and the goods were not to be laid down, until the clerk could get an account of them. This has been the arrangement for the last ten or twelve years, more or less; and more particularly the arrangement for the last five years. In the year 1851, it was as I have described. If the boat was out of time, we never received any goods for the boat, but if the boat was there, the clerk of the boat was the person to receive the freight, or some one by his direction. The intention was, for the clerk to have an account of the freight, before the carman left the goods. No one of the hands was ever authorized to receive the freight, unless the clerk authorized him to do so."

John C. Collier testified: "I was clerk of the Traveller in August, 1851, and during the entire year. There are two clerks, and as early as half-past seven, in August, immediately after breakfast, the clerks went on to the dock. It was their business to remain, invariably, until the boat left, and take an account of the freight left; and if one clerk was called away, the other took his place, and their business, while there, was to take an account of the freight, make a memorandum of it, and sign the receipts for it, and this was the custom, without any exception. No person on board the boat, but the clerk, was authorized to receive the freight. If the clerk sent any body to take a load of freight, the receipt was sent to the clerk, and he signed it. In August, 1851, my associate was Roberts, I think. I know of no other usage of the boat but that I have spoken of."

Richard A. Roberts testified: " I was, in 1851, second clerk to receive freight. John Collier was the other clerk. In August, 1851, I stood on the dock, in the morning, until the boat left, (time for breakfast was six or seven o'clock,) and

when I was gone, Collier stood there.   In all cases, when I received freight, I signed a receipt for it.   No other person was authorized to receive freight, except myself and Collier. I entered the freight as I received it, on a small memorandum, and from that it was transferred to the freight book. Enquiry was made for these two trunks, when I was aboard of the boat, but I knew nothing about them.   I don't know by whom the enquiry was made.   The boat was never left in charge of a deck hand, between nine and ten o'clock.   Any goods, of any kind, were put on the dock, while they were washing, for fear they would be damaged.   I was there to receive the freight, and if 1 was not there, Collier was there. The freight was put on the dock until the washing was through, and then it was put on the boat.   Collier made up the freight book, after the boat left the dock."

———— Peck testified: " I was general agent, in August, 1851, of the boat, and I had no other business.   I have navigated steamers, between here and New York, for twelve years.   In August, 1851, the clerks of this boat were authorized to receive freight for the boat, and no one else was authorized.   Our mode was to sign receipts for freight, as it came on to the dock, and before it went aboard of the boat.   The clerk stood at the gangway on the dock, at the head of the plank, where he could be seen, and checks the freight.   Nothing could go on board, without his seeing it.   I know nothing of these trunks, except that I heard captain Bownes mention them at the time."

The jury returned a verdict for the plaintiff.

The defendants moved for a new trial, on the ground that said verdict was manifestly against the weight of evidence.

*R. I. & C. R. Ingersoll*, in support of the motion.

1. To charge a common carrier with the loss of goods, they must have been delivered to him, and accepted by him. This delivery, in the absence of any established usage, or special agreement to the contrary, must be into the hands of

the carrier himself, or of his servant, or agent duly authorized by him, to receive and accept goods for him. Angell on Carriers, § 129, *et seq.* *Merriam* v. *H. & N. H. Railroad Co.,* 20 Conn. R., 354. *Packard* v. *Getman,* 6 Cow., 757. *Buckman* v. *Levi,* 3 Camp., 414. *Tower* v. *Utica & Schen. R. R.,* 7 Hill, 47. A delivery to a servant of the carrier, not in authority, nor in the habit of receiving goods for him, as to one of the crew of a ship, is not sufficient. Angell on Carriers, § 146. *Leigh* v. *Smith,* 1 C. & P., 638. *Cobban* v. *Downe,* 5 Esp., 41. *Blanchard* v. *Isaacs,* 3 Barb., 388. *Olive* v. *Eames,* 2 Stark., 181.

2. In the case at bar, there was no evidence, before the jury, of any usage, or agreement, dispensing with the necessity of an actual delivery to the defendant, or to his servant appointed for the purpose, of all freight intended to be forwarded by his boat. On the contrary, the evidence was ample and uncontradicted, that the defendant had provided clerks, whose special duty it was to receive, and take account of, and give receipts for, all such freight; that no one but those clerks had any such authority, and that it was the uniform and established usage, and accustomed mode of dealing with the public, for the defendant to receive freight through the channel he had thus provided.

3. There was no evidence before the jury, to justify them in finding, that the man on the deck of the steamboat was authorized, by the defendant, to accept freight for him, or even that he was attached to the boat in any regular capacity. The nature of his employment, and his whole appearance, exclude any presumption that he was entrusted with any authority on board the boat, and especially with the responsible duties of taking charge of freight. Nor did he assume any such authority. He simply indicated a spot where the trunks could be deposited. He was not requested, nor did he manifest any intention to take charge of them. Nor from the fact, that this man was the only person seen on the deck by Swain, could the jury have reasonably presumed, that he

Trowbridge *v.* Chapin.

was therefore invested with the authority of an officer. Rigorous as the responsibility is, which the law imposes upon the carrier, it does not excuse negligence in those dealing with him, or visit him with consequences which their diligence might have avoided. " He has a right to require that, in making a delivery, due care and diligence shall be exercised by the seller." *Buckman* v. *Levi*, 3 Camp., 414. It was the duty of Swain, himself a carrier, to have enquired into the authority of this man, to have sought out the proper officer of the boat, and to have taken a receipt.

*Dutton & Munson*, and *J. S. Beach*, contra.

1. The finding, involved in the verdict of the jury, that the plaintiff's trunks went on board the defendant's boat, was correct, and any other would have been palpably against the evidence.

2. The trunks were received on the boat, with the knowledge, or consent, of a person authorized to receive them. It is proved that the boat was at the dock, for the purpose of receiving freight, and the only person in charge of her, was the individual to whom the trunks were delivered. He must, therefore, be presumed to have had the requisite authority, unless it is clearly shown that he had not. The defendants argue that, as he was engaged in washing the deck, he must have been one of the hands, and therefore without authority. As a hand, merely, he had no general authority to receive freight, but as the boat was there for no other purpose than for the reception of freight, and as he was the only person to whom the charge of the boat was committed, he must on this occasion, whatever may have been the general capacity in which he was employed, have had the requisite authority to receive the freight, especially as the regulation of the boat required that some person should be in constant attendance for that purpose. It was not unusual for the clerks, during a temporary absence, to delegate their authority to one of the hands, even though he was not the only person left in charge.

If the clerk ever delegated his authority to one of the hands, the jury would certainly have the right to presume that, on this occasion, he complied with the regulations of the boat, and delegated it to the only person left in charge.

3. It was the duty of the defendants to have some person either on the dock, or on the boat, capable of receiving freight. *The Taff Vale Railway Co.* v. *Giles*, 22 Law and Eq., 202. *Scotthorn* v. *South Staffordshire Railway Co.*, 18 Law & Eq., 553. This duty the defendants recognized by their regulations. The question was properly submitted to the jury, to say whether the man left in charge of the boat was not such a person; and upon the evidence, the jury properly answered the question in the affirmative.

Hinman, J. We think the verdict, in this case, so clearly against the weight of evidence, that a new trial must be granted on that ground. We are not called upon to determine any point of law in the case, because the parties claim, or admit the law to be, that, in order to charge a common carrier with the loss of goods, it must be shown that they were delivered to, and received by, him or his agent, to be carried; and it is further claimed by the defendant, and admitted by the plaintiff, that the ordinary hands, or in other words, the crew of a vessel are not, generally, agents of the owners, for the purpose of receiving them. The business of the crew is to navigate the vessel, under the direction of the master; and the master, or some officer under him, should receive and discharge freight, as well as superintend the navigation of the vessel; and all the difficulty there is, in the case, is in the application of these familiar principles to the facts proved. It was proved, by the defendant, that the clerk of the boat was the only person whose duty it was to receive, take an account of, and give receipts for freight. This was the uniform mode in which freight was received for transportation. But the plaintiff did not prove a delivery to this officer, nor to the master, nor to any one acting in the behalf of

either of them, so far as the evidence shows. The trunks were carried on board by Swain, a porter, and he says that he saw only one man there, who was engaged in sweeping, or washing out, the boat. He thought, from his appearance, he had been washing the decks. Swain merely informed him, that he had a couple of trunks for New Haven, and asked where he should put them. The man, pointing to a spot, told him to put them there, which he did, and left the vessel without any enquiry as to this man's name, or business, or whether he belonged to the vessel, or had any authority to receive freight, or whether there was any one on board who had such authority; and he made no examination himself, to see whether there were other persons on board, or not. Now, it is very probable that the man on board belonged to the boat; still it is quite possible that he might have been a mere dock laborer, employed only to wash the decks, or to cleanse the boat. But whether he belonged there, or not, his employment and appearance, as described by the plaintiff's witnesses, indicate that he was an ordinary hand, or common laborer, rather than any officer of the boat. Under such circumstances, it appears to us, that it was the obvious duty of Swain to have made further examination and enquiry, before he left the trunks. Had he gone to the office, very probably he might have found the clerk; and it is quite clear that many others, beside the man he saw, might have been on board at the time, without his seeing them. We presume, from the defendant's testimony, that other persons were there, but whether so, or not, it was gross carelessness in the porter to leave the trunks as he did, and we do not see how the jury could have found that they were properly delivered, and received, by the defendant, for transportation. It was said that, as the boat was at the dock for the purpose of receiving freight, the porter had a right to infer that the man on board was authorized to receive it. How this would be, had it been shown that he was the only person there, it is not necessary to determine. But without any evidence of

this sort, we see no ground for any such inference. For these reasons, we advise the superior court to grant a new trial of the cause.

In this opinion Ellsworth, and Sanford, J. J., concurred.

WAITE, C. J.   I see no reason for disturbing the verdict in the present case.   The defendant was the owner of the steamboat Traveller, running between New York and New Haven, and as such, a common carrier, and responsible for all goods delivered to him, for transportation, between those places.   And this he does not deny.

His defence is, that the goods in question were never delivered to him.   But does not the evidence most clearly prove such a delivery, as makes him chargeable with the possession?

Two witnesses were introduced, on the part of the plaintiff, whose characters were unimpeached, and who testified that they carried the goods on board the boat, and placed them, as directed by a man they found at work there.   There was, indeed, testimony, on the part of the defendant, tending in some slight degree to invalidate their testimony; but, in my judgment, altogether insufficient for that purpose, and so the jury must have thought, as appears by their verdict.   Indeed, it has hardly been contended, on the part of the defendant, that a delivery, as stated by the witnesses, was not sufficiently proved.

The main question in the case, is, whether such a delivery is sufficient to bind the defendant.

The testimony is, that the trunks were carried on board the defendant's boat, on the day of her sailing for New Haven, and during the time when it was customary to receive freight, and when, according to the testimony of his own witnesses, it was usual and customary for him to keep persons there, duly authorized to receive freight and baggage.

The persons who carried the trunks, finding no person on

board, or on the deck, but a single man at work, evidently in the employment of the defendant, informed him what the freight was, and where it was to be carried, and left it on board, as he directed. And had they not a right to presume, from the circumstance, that they could find no other person to receive the freight, that he was left in charge, during, at least, a temporary absence of the proper officers of the boat?

Suppose a quantity of freight had been shipped by the boat from New Haven to a merchant in New York, and a carman had taken it and carried it to the merchant's store, which he found open, and no one in, or about it, except a man at work in the store, would not the carman be justified in leaving the goods, deposited in the store, in the manner directed by the man at work?

Would it be his duty to leave his team, and go in search of the merchant, and, in case he could not find him, carry the goods back to the boat? It seems to me that this could hardly be required.

Were the merchant to say, I am not answerable for the goods,—the man found in my store was but a porter, having no power to bind me by a receipt of goods, even in my own store, the obvious answer would be, then you should not have left him in your store, in a situation to induce the belief that he had power to do an act of that kind, at least during the temporary absence of his superiors.

The rule, that where one of two persons must suffer by the fraud of another, the loss shall fall upon him who placed that person in a situation to commit the fraud, applies in the present case.

If the defendant did not intend that the only person, found on board of his boat, should receive freight, he should not have left his boat, with no other person in charge, during the proper hours for receiving freight. Having done so, the loss ought to fall upon him, rather than upon the men who delivered it. The latter have done all that ought reasonably to be required of them.

Trowbridge *v.* Chapin.

It was the duty of the defendant to keep proper men to receive all freight, delivered on board of his boat, during the regular business hours.

And if a loss has accrued, in consequence of his neglect of that duty, the fault was his, and he should bear the loss.

And this is in conformity with the principle, by this court recognized, in a very recent case. *Merriam* v. *The Hartford & New Haven Railroad Co.*, 20 Conn. R., 354. It was there holden, that a delivery of goods, on the private dock of common carriers, in their exclusive use, and in the usual and accustomed manner, in which they received goods for transportation, was good, and sufficient to charge them with a loss, although neither the carriers, nor their agents, were notified of the delivery. And surely a delivery on board the defendant's steam boat, with notice to the only person in their employment, found on board, ought to be as effectual as a delivery on their private dock, without notice to any person.

For these reasons, I am of the opinion that no sufficient reason is shown for setting aside the verdict.

In this opinion, Storrs, J., concurred.

New trial to be granted.