### MARY TORPEY v. JOHN S. WILLIAMS AND OTHERS.

By the laws of New York, all emigrants arriving at the port of New York are required to be landed, with their baggage, at Castle Garden, in the City of New York. The plaintiff, being an emigrant passenger on the defendants' steamer from Liverpool to New York, was, on the arrival of the vessel at the latter port, transferred, with the other emigrant passengers and their baggage, from the steamer to a tug boat or barge, by which they were carried to and landed at Castle Garden. The barge was licensed by the Commissioners of Emigration, as required by statute, but was employed by, and at the expense of, the defendants: *Held*, in an action by the plaintiff for the loss of her baggage, the complaint alleging a breach of the contract of carriage from Liverpool to the city of New York, that the transportation by the barge from the steamer to Castle Garden was but a continuation of the transit from Liverpool to the city of New York, which the defendants undertook by their contract to make and in the manner provided by law; and therefore that the defendants are liable for non-delivery of the plaintiffs' baggage to her at Castle Garden.

Both money and jewelry form part of a passenger's baggage, for loss of which a carrier is liable, provided the former does not exceed a sum necessary for traveling expenses, and the latter is confined to such as is ordinarily worn about the person.

APPEAL from a judgment of the Marine Court entered on a verdict.

The action was brought to recover for the loss of certain baggage claimed to have been placed by the plaintiff (a steerage passenger) on board the steamship Manhattan, to be conveyed from Liverpool to the city of New York. The complaint alleged that the defendants were common carriers, and in consideration of the sum of four pounds sterling, "promised and agreed to transport the plaintiff and her baggage from Liverpool to the city of New York." It appeared on the trial that on the arrival of the vessel at New York, the box, containing the baggage claimed, was last seen by the plaintiff while being taken from one side of the ship to the other to go over into the tender or barge, and the plaintiff received a check for her baggage, marked "Castle Garden D. 576." The next day the plaintiff applied for her baggage, at Castle Garden, and also to the defendants,

but never received it. The barge on which the baggage was placed was licensed by the Commissioners of Emigration, as required by statute (Laws of 1848, ch. 218; Laws of 1857, ch. 579). The defendants, ship-owners, were by law obliged to take and pay for only such barges as the Commissioners should approve. At the close of the evidence, the justice charged the jury, among other things, "that the defendants are liable until the baggage is delivered either to the passenger or at the dock and wharf in the city of New York, designated by the Commissioners of Emigration. The licensing of this vessel or barge does not make a delivery to it a delivery to the Commissioners. Anything that is useful to the passenger—watch or jewelry—may be allowed for, if it was actually in the trunk."

*Beebe, Dean & Donohue*, for appellants.

*John H. Harnett*, for respondents.

By the Court.—Brady, J.—The plaintiff was a passenger on board the defendants' steamer, Manhattan, from Liverpool to New York. She had a trunk, which contained articles of clothing, a watch, and some jewelry, and other things of trifling value, which usually distinguish the baggage of women.

The trunk, on the arrival of the steamer at this port, was checked with one of the checks issued by the Commissioners of Emigration for this port, and placed on board of one of the tugs or barges licensed by them under the Act of the Legislature passed in 1857 (Laws of 1857, chap. 579).

The trunk was never seen by the plaintiff after it was brought up on board of the steamer to be checked, and the case fails to show when or where it was lost. It is last known of on board the barge or tug, but the plaintiff did not see it there. The evidence is, therefore, not of that affirmative character—which is the more preferable—but circumstantial, and the jury have found that the defendants failed to deliver it either to the plaintiff or at Castle Garden.

The defendants' counsel seems to have tried the cause upon the theory that the defendants were not liable from the mo-

ment the trunk was delivered to the crew of the tug or placed on board of her ; and that the officers of the tug or owners, were the authorized agents of the Commissioners of Emigration to receive it. The exceptions taken to the charge of the justice were founded on these theories, although one was to the right of the plaintiff to recover the value of her watch and jewelry.

It has been decided that the Commissioners are not responsible for the loss of baggage delivered by an emigrant on board of a ship in the harbor of New York to the crew of a tug-boat to be transported to Castle Garden, although the tug or barge was licensed by them (*Murphy* v. *Commissioners, &c.*, 28 N. Y. 134). They do not act for themselves, it is said, in that case ; or employ agents, clerks, or servants for their own benefit, but for the benefit of the community at large, and, therefore, the theory of the defendants is erroneous.

The Commissioners had no authorized agents on board of the tug. They were vested with powers to protect the city and State against the burden of supporting paupers brought here, and to protect the emigrants from a class of men, who led them to boarding-houses only to plunder them. The duty imposed upon the carrier to land them at Castle Garden enabled the emigrant to receive the proper information and instruction as to his destination and temporary abode. There was no intention on the part of the Legislature to relieve the carrier from any liability or duty, and there is nothing in any of the statutes in relation to the Commissioners which justifies any such assumption.

The carrier was bound to land the passenger and baggage in this city, and is now required by law to do it at a particular place. The selection of the barges by license is only a continuation of the protection afforded the emigrant, which is designed to prevent improper influences by unworthy persons, who might innocently be employed by the carrier to transport the passengers and baggage to Castle Garden. The tug or barge is in the employment of the ship-owners, and paid for by them, and the carriage from the ship to Castle Garden is a continuation of the transit from Liverpool to New York, which they undertake by the contract to make and in the manner pro-

vided by law. It is apparent, from these statements, that the defendants were not discharged of their responsibility, on the delivery of the baggage on board the tug or barge, and that the refusal to charge to the contrary was not an error.

The justice was requested to charge, however, that the defendants were not responsible for the money, or jewelry, or anything save necessary apparel for such a voyage, and he refused to do so. The refusal was proper. Both money and jewelry form a part of the baggage of a traveler, subject to the qualifications that the former cannot exceed a sum necessary for traveling expenses, and that the latter must be confined to such as are ordinarily worn about the person (*Merrill* v. *Grinnell*, 30 N. Y. 595; *McCormick* v. *Hudson R. R. Co.*, 4 E. D. Smith, 181).

The money and jewelry which the plaintiff had were not without the principle of these cases. The sum of money was small, the watch of reasonable value, and the jewelry of little value.

The exceptions relating to these features of the case are unavailable, and there is nothing in the appeal taken which would justify us in disturbing the judgment of the court below.

Judgment affirmed.