## GLEASON VS. GOODRICH TRANSPORTATION COMPANY.

COMMON CARRIER OF PASSENGERS: LIABILITY FOR BAGGAGE. (1) *Carrier may establish reasonable regulations.* (2) *Delivery necessary.* (3) *Delivery, to whom.* (4) *No delivery in the case stated.* (5, 6) *Erroneous instructions.* (7) *Effect of locking state room.* (8) *Consent to regulations, when not required.* (9) *Effect of posting notices.* (10, 11) *What may be included as baggage.*

1. A carrier of passengers may establish any *reasonable* regulation which he may deem necessary for the safety of their baggage, and is not liable where a passenger, knowing of such regulation, loses his baggage through his own neglect or refusal to comply with it.

Gleason vs. Goodrich Transportation Company.

2. To charge a common carrier with the loss of property, it must be shown to have been *delivered* to him for transportation; and if there be an established usage in the carrier's business, delivery according to such usage must be shown.

3. Delivery to a servant or agent of the carrier must be to one intrusted to receive goods, and not to one merely engaged in other duties.

4. Plaintiff took passage on a steamboat, and, upon purchasing his ticket, asked for a key to the state-room assigned him by the clerk or steward; but, being informed that they gave no keys, he replied that he did not care for that — all he wanted was to place his baggage in some room where it would be safe while he went down to get his trunk of samples checked. He deposited his valise in the *unlocked* room, calling the attention of two or three cabin or saloon boys to the fact, asking their opinion whether it would be safe, and receiving an affirmative answer. When he returned to his room, after an absence of three-quarters of an hour, the valise was gone. There was a porter or checkman on the boat, whose duty it was to receive and check baggage, which plaintiff knew. There was no evidence in the case of any custom of travelers to deposit their baggage in the manner plaintiff did; nor of any usage of carriers by steamboat, or of defendant in particular, to accept delivery in that way; nor of any specific direction or assent on the part of the carrier; nor was there any finding by the jury that the carrier was guilty of negligence in not providing the state-room door with a suitable lock and key, according to the custom of such carriers, and that such negligence caused the loss. *Held*, that there was no delivery of the valise to the carrier, and he was not liable for its loss.

5. There being no evidence that any person connected with the boat knew of or consented to plaintiff's act in depositing his valise in the state-room, except said cabin or saloon boys, it was error to instruct the jury that if he made such deposit "with the knowledge and consent of those having charge of the boat," the carrier was liable.

6. Such instruction was also defective in not submitting to the jury the question whether plaintiff was guilty of negligence in making such deposit.

7. *It seems* that where personal baggage of a passenger on a steamboat is deposited by him in his state-room, and such room is *locked*, the baggage will be held to have been delivered to the carrier for transportation, and the latter will be liable in case the same is stolen.

8. If reasonable regulations of the carrier in regard to the manner of delivery of baggage are brought to the knowledge of a passenger, his *consent* thereto is not required to make them binding.

9. A passenger by boat is under no obligation to know the contents of

Gleason vs. Goodrich Transportation Company.

written or printed notices, posted in the boat in conspicuous places, stating the carrier's regulations as to the delivery of baggage; though he is bound by such regulations, if reasonable, when informed of them in fact, whether by reading such notices or otherwise.

10. In general an article which is not carried by a passenger as one of merchandise, but as one of personal use and convenience to him, "according to the wants of the particular class of travellers to which he belongs," and which is taken with him with reference to the immediate necessities, and not merely to the ultimate purposes of his journey, will be regarded as properly a part of his baggage.

11. Thus, a manuscript "price book," which plaintiff carried about with him in his valise while engaged as traveling agent in selling Sheffield goods, and which contained the prices of the component parts of such goods, and was used by him when making sales, to ascertain values which he could not carry in his memory, is *held* to have been a part of his personal baggage.

APPEAL from the County Court of *Milwaukee* County.

*Gleason*, a commercial traveler, brought his action against the defendant company to recover the value of a valise and its contents, lost by him while a passenger upon defendant's boat. The complaint alleged payment of fare, delivery of baggage to defendant, and its loss. Answer, a general denial. Plaintiff testified that on purchasing his ticket he asked for a room, which was assigned him, and demanded a key, but was told by the clerk that no keys were given. Plaintiff replied that he did not care; all he wanted was to place his things in any room where they would be safe while he went down to get his trunk of samples checked. He then placed his valise in the state-room, and told the saloon boys what he was doing, and was told by them that the things would be safe. Plaintiff then went down to look after his trunk of samples, and was gone about forty minutes; when he returned the valise was gone; the clerk had previously told him it would be safe there. On cross examination plaintiff testified that the boys he spoke to were dining-room boys; that he had his other baggage checked by the man for that purpose; did not see any notice that the boat would not be responsible for baggage unless delivered to

the porter and checked; had a price book in the valise containing the prices of component parts of all Sheffield goods, such as files, tools and cutlery; used this book in his business for correcting values, there being so many that he could not keep them in his head.

Defendant then moved for a nonsuit, upon the grounds, first, that the property described, as appeared from the plaintiff's own showing, was never delivered into defendant's possession for any purpose whatever; second, that plaintiff was guilty of negligence which contributed to the loss. The motion was overruled. Testimony was then offered for defendant, showing that there was a man on the boat whose duty it was to check baggage; his office was where it could be discovered in coming from the shore to the ticket office. The porter or checkman stood by the gangway to see to all baggage that came aboard, and to check it. Two notices were posted on the main deck at the entrance to the boat, directing passengers to check their baggage, and similar notices were posted at the state-rooms. The clerk of the boat denied that plaintiff had told him of his intention to put his baggage in the state-room. The steward testified that he had refused plaintiff a key, telling him that they gave no keys, but that the porter would check his baggage. The instructions are fully stated in the opinion. Verdict and judgment for plaintiff; and defendant appealed.

*Carpenter & Murphey*, for appellant, contended that the court erred in instructing the jury that, to enable defendant to avail itself of the general notices posted up concerning baggage, it must appear that the terms of the notice were brought to plaintiff's knowledge, and that he assented to them. A distinction should be observed between the rules applicable to general notices seeking to *limit* a carrier's liability, and those seeking merely to *qualify* it. In the one case, knowledge and consent on the part of the owner have been held necessary to relieve the carrier of his common law liability; in the other case, consent is never required, nor is it necessary to prove knowledge.

2 Greenl. Ev., § 215 ; Redfield on Carriers, 140, n. 2., 123, 119, n. 1 ; Angell on Carriers, § 245 ; 1 Parsons on Con., 711, note (h) and cases cited ; *Wilton v. The Atlantic Royal Navy Co.,* 10 Q. B. (N. S.), 453 ; *Freeman v. Newton,* 3 E. D. Smith, 246 ; *Van Foll v. S. E. R. Co.,* 12 C. B., 75; *Orange Co. Bank v. Brown,* 9 Wend., 85, 115 ; *Moses v. Boston and Maine R. R. Co.,* 4 Fost., 71, 90 ; *Whitesell v. Crane,* 8 Watts and Serg., 369. The notice in this case sought only to qualify, and not to limit defendant's liability. 2. Upon the question of delivery to the carrier, counsel argued that in no case is the carrier bound unless the delivery is made to himself or to his proper agent, authorized for such duties. Angell on Carriers, § 146 a ; *Trowbridge v. Chapin,* 23 Conn., 595 ; *Ford v. Mitchell,* 21 Ind., 54 ; Redfield on Railway Carriers, 248, § 7 ; *Blanchard v. Isaacs,* 3 Barb., 388 ; *Grosvenor v. N. Y. C. R. Co.,* 39 N. Y., 34–6 ; *Forbes v. Davis,* 18 Tex., 268. Therefore calling the attention of the dining-room boys to the situation of the valise would not constitute a delivery and acceptance, since their duties had no respect to freight or baggage. *Trowbridge v. Chapin, supra.* The liability of carriers for baggage being founded solely upon usage, the carrier should not only be permitted to qualify his liability by general notice brought home to the owner's knowledge, but the burden of broof should be shifted upon the owner, to show that he had no knowledge of such notice, and the jury should have been so instructed. The jury should also have been instructed to find whether plaintiff assumed personal charge of his baggage; if so, he could not recover. *East India Co. v. Puller,* 2 Strange, 690 ; *Tower v. Utica and S. R. R. Co.,* 7 Hill, 47 ; *White v. Winnisimmet Co.,* 7 Cush., 155 ; *Wilson v. Hamilton,* 4 Ohio St., 722–741. In the case of hand baggage taken charge of by passengers, even where no question of delivery arises, the liabilities of the carrier are somewhat diminished, and the duties of the passenger increased, since the passenger and not the carrier has the immediate custody of the property. Bonney on Railway Car-

riers, 24; *Stephenson v. N. Y. and H. R. R. Co.*, 2 Duer, 341. 3. The book of orders was not properly a part of plaintiff's baggage. "By baggage we are to understand such articles of necessity or personal convenience as are usually carried by passengers for their personal use, and not merchandise or other valuables, although carried in the trunks of passengers, which are not designed for any such use, but for other purposes, such as a sale and the like." *Blanchard v. Isaacs*, 3 Barb., 388; *Hawkins v. Hoffman*, 6 Hill, 586; *Bell v. Drew*, 4 E. D. Smith, 59. Originally carriers were in no case responsible for baggage, unless paid for as other freight. *Middleton v. Fowler*, 1 Salkeld, 282, and cases cited; *Upshare v. Aidee*, 1 Comyn's Rep., 25. The rule was finally modified by the courts upon the implication that it was intended that the passenger should carry his necessary wardrobe, and that the fare for this was included in his personal fare. *Brooks v. Pickwick*, 4 Bing., 218; *Pudor v. Boston R. R.*, 26 Maine, 458. The rule was gradually extended to include money sufficient for traveling expenses, and books for amusement on the journey, but the cases all had regard to the personal convenience of the passenger upon his journey proper, and all baggage not so required was paid for as freight. Hence the court erred in instructing the jury that "such books as may be necessary for use in the business" for which a passenger may be travelling, are baggage.

*R. N. Austin*, for respondent, to the point that a common carrier can not limit his common law liability by notice, even though such notice may have come to the knowledge of the employer, unless his assent be clearly proven, cited *McMillan v. M. S. R. R. Co.*, 16 Mich., 79; *Southern Ex. Co. v. Newby*, 36 Ga., 635; *Dorr v. N. J. St. N. Co.*, 1 Kern., 485; *Cam. Trans. Co. v. Belknap*, 21 Wend., 354; *Clark v. Faxton*, 21 Wend., 153; *Cole v. Parker*, 19 Wend., 125; *Hollister v. Nowlen*, id., 235; *Fish v. Chapman*, 2 Kelly, 361; *Moses v. R. R.*, 4 Foster, 85; *Davidson v. Graham*, 2 Ohio St., 131; *Western T. Co. v. Newhall*, 24 Ill., 466; *Farmers etc. Bank v. Champlain*

*etc. Co.*, 23 Vt., 186. Conceding the doctrine of *Boorman v. The American Express Co.*, 21 Wis., 152, that the carrier may limit his liability as an insurer by express contract, and that a receipt for the goods, or a bill of lading, accepted by the shipper, may constitute such a contract if assented to by him, and that such assent may be presumed if he retains the receipt or bill without objection, yet no such effect has been given to a mere notice, which he might have seen, but did not see, or which he did see, but there is no proof of his acquiecsence therein. Even had the plaintiff seen the notices, he was under no obligation to put such of his baggage as he needed for use where it would be beyond his reach when wanted for comfort or convenience.

Dixon, C. J. It is an undoubtedly well settled general rule, that a carrier of passengers has the right to establish any reasonable regulation which he considers necessary to secure the safety of the baggage of his passengers ; and if the passenger knows of the regulation and his baggage is lost through his neglect or refusal to comply with it, the carrier is not answerable. But in a well considered opinion by Daly, First Judge, in *Macklin v. New Jersey Steamboat Co.*, 7 Abbott's Pr. R., N. S., 241 (*S. C.*, 9 Am. Law Reg., N. S., 239), that learned judge expressed the view that a regulation forbidding a passenger upon a steamboat from taking his baggage with him into his state-room or private chamber, except at his own risk, is not a reasonable regulation, so far as it would apply to light baggage or hand satchels, containing articles required for present use in travel, and cannot exonerate the carrier from liability for the loss of such baggage when taken by the passenger to his room in disregard of the regulation. Upon this point the judge said : " When a passenger pays in addition for a separate or private room, or, as it is called, a state-room, in these boats, he does so to get greater and better accommodation, and for the privacy and security which it affords. If he has simply with him a valise — a small portable article, coming under the denomination of light

Gleason vs. Goodrich Transportation Company.

baggage, as it may be carried in the hand, and that from its limited size usually admits of little else than the clothing and toilet articles required for present use,— he has the right, where such is the general character of its contents, to take it with him into the chamber provided for him, and where he is to pass the night; and having placed it there and locked the door, the obligation is upon the carrier to see that his property is not purloined or stolen. Any regulation, the effect of which would be to prevent him from doing this, would be unreasonable. It is essential to the traveler's convenience and comfort, and the law would not descend into the particularity of insisting that he should open the valise, and, taking out of it exactly what was requisite for the night, lock it up, and then take it and deposit it in the baggage room for safe keeping." The views thus expressed are criticised in the case of *The R. E. Lee*, 2 Abb. U. S. Cir. and Dis. Ct. R., 49, but are sanctioned by the decisions of the same court in *Mudgett v. Bay State Steamboat Co.*, 1 Daly, 151, and *Gore v. Norwich & New York Trans. Co.*, 2 Daly, 254. It is to be observed of all the foregoing cases, however, that in each the state-room door was provided with a lock, of which the key was delivered to the passenger, who had it in his possession, leaving the door of the room locked when the same was broken and entered, and the articles stolen for which the carrier was held responsible.

And there are some decisions of recent date in the English courts respecting the liability of carriers by rail, which tend very strongly to sustain the rule of the court of common pleas of the city of New York. *Le Conteur v. L. & S. W. Railway Co.*, L. R., 1 Q. B., 54; *Talley v. Great Western R'y Co.*, L. R., 6 C. P., 44. Those decisions relate to the responsibility of railway companies for the loss of baggage, such as carpet bags, books, cloaks and other like things wanted by passengers upon their journey, and which, with the consent of the company, they are accustomed to carry in the carriage with them. With respect to such articles, so carried, it was said by COCKBURN, C. J., in

the first named case, that he could not help thinking "we ought to require very special circumstances indeed, and circumstances leading irresistibly to the conclusion that the passenger takes such personal control and charge of his baggage as to altogether give up all hold upon the company, before we can say that the company, as common carriers, would not be liable in the event of the loss." All the other justices were of the same opinion. In the other case the court evinced a disposition to modify somewhat the stringency of the rule, yet holding the company liable where. the negligence or inattention of the passenger did not contribute to the loss. It is very unlikely that the same rule would be applied to light baggage thus carried by railway travelers under ordinary circumstances in this country ; but the decisions are valuable as illustrating the rigid doctrines of the common law upon the liability of carriers, when not exempted by some well known usage, by statute, or by special agreement of the parties.

In the present case, the plaintiff deposited his hand-bag or valise in an unlocked state-room, whence, with the articles contained in it, it was lost or stolen. The room was that assigned him by some officer of the boat, the clerk or steward, probably the latter, at the time he went on board, and when he purchased his ticket. He asked for a key to the room, and was informed they gave no keys, to which, as he testifies, he replied he did not care for that — all he wanted was to place his baggage in any room where it could be safe while he went down to get his trunk of samples checked. He deposited the valise in the unlocked room, having first called the attention of two or three cabin or saloon boys to the fact, and asked their opinion if it would be safe, and received from them an affirmative answer. After an absence of about three quarters of an hour, he re-turned to the room, and the valise was gone. Had the plaintiff been furnished with a key to the room, and had he left it locked with the valise in it, we should have little difficulty, probably, in adopting the rule of the cases first above referred

to, and in holding the defendant answerable for the loss. In such case the deposit in the state-room would be regarded as a delivery to the carrier, and the reasons for holding him responsible seem quite clear and satisfactory.

But the distinguishing feature of the present case is, that the state-room door was provided with no lock, and the plaintiff knew it when he left the baggage there with the door in that condition. Was the deposit, under such circumstances, a delivery to the company as a common carrier, unless the same was made with the knowledge or consent of some officer of the boat or agent of the company authorized to give direction in the premises? Was it negligence for the plaintiff so to deposit it without the knowledge or consent of some such officer or agent?

The rule of law is, that to charge a common carrier with the loss of property, it must be shown to have been delivered to him, or to his agent, for transportation; and if there be an established usage in the carrier's business, delivery according to that usage must be shown. Delivery, if made to a servant or agent of a carrier, must be to such an one as is instructed to receive goods, and not one engaged in other duties; and where an established mode of delivery is shown, that mode must be pursued. *Trowbridge v. Chapin,* 23 Conn., 595; *Ball v. New Jersey Steamboat Co.,* 1 Daly, 491; Angell on Carriers, § 146a. The case discloses no custom of travelers to deposit their baggage in the manner the plaintiff did, nor usage of carriers by steamboat in general, or of the defendant in particular, to receive or accept delivery in that way. It does appear that there was a porter or checkman on the boat, whose duty it was to receive and check baggage, and that the plaintiff had knowledge of that fact. In the absence of proof of any general or special usage authorizing the deposit, and with no evidence of specific direction or assent on the part of the carrier, and no finding by the jury that he was guilty of negligence in not providing the state-room door with a suitable lock and key ac-

cording to the custom of such carriers, and that such negligence caused the loss, we should say the carrier could not be held responsible in the action, and that the placing of the valise in the state-room under such circumstances would not constitute a delivery. The case as here presented is wanting in evidence upon all these points; nor was there any instruction asked by either plaintiff or defendant calculated to bring them to the attention of the court at the trial. Neither was there any instruction asked or given touching the point of negligence on the part of the plaintiff contributing to the loss.

On the part of the plaintiff the two following instructions were asked and given, both of which, on the case made by the plaintiff, were, we think, erroneous.

"First. If the jury find that the plaintiff left his baggage in the possession of the defendant's boat by the direction and with the knowledge and consent of those having charge of the boat, and that the same was lost or stolen, they must find for the plaintiff. Second. If the jury find that the plaintiff had taken his passage on the defendant's boat and paid his fare, and, with the knowledge and consent of those having the boat in charge, left his baggage in a state-room assigned to him for his use as a passenger, it was a delivery thereof to the defendant, and they must find for the plaintiff."

It appears very clearly from the cross examination of the plaintiff (and his was the only testimony tending to show knowledge and consent on the part of those having the boat in charge), that the saloon or dining-room boys were the only persons in charge of the boat who had such knowledge, or who professed to give such consent. There was no proof of knowledge or consent on the part of any other person engaged in or about the boat. The reference in the instructions must, therefore, have been to the knowledge and consent of those boys, and the jury were told, if they so found, that their verdict must be for the plaintiff. This was clearly insufficient upon the rule above stated. The dining-room boys were not authorized to waive

conditions, or accept delivery of baggage in that manner. Their knowledge and consent was not the knowledge and consent of the defendant, or of those having charge of the boat and authorized to represent and bind the defendant in that particular. There was no proof that either the clerk or steward of the boat had such knowledge, or that they gave such consent or any similar direction with respect to the baggage of the plaintiff.

But the more serious objection in point of law to the instructions is, that they failed entirely to notice and to submit as a question of fact to be found by the jury, that the plaintiff was guilty of no negligence in depositing and leaving his baggage in the manner testified to by him. It cannot be doubted that the evidence was such as fairly raised and presented this question, and that the jury should have been required to pass upon it. It may have been the fault of the defendant that no specific request to charge upon this point was made; but yet we think the instructions given at the request of the plaintiff were defective and improper in wholly omitting it. "All the books agree," says NELSON, C. J., in *Tower v. Railroad Co.*, 7 Hill, 48, "that if the negligence of the passenger conduces to the loss of the goods, the carrier is not responsible." And this rule of law is peculiarly applicable to cases where, at the request of the passenger or with the assent, express or implied, of the carrier, baggage or goods are placed so as to be partially under the supervision and control of the passenger himself. The implied condition in all such cases is, that the passenger shall take ordinary care of the goods; and if his negligence causes the loss, the carrier is not responsible. It was upon this ground that the carrier was excused in *Talley v. Great Western R'y Co.*, *supra*, where the court say: "There is, moreover, a general principle applicable to these as to all bailments, viz., that the bailor shall not be heard to complain of loss occasioned by his own fault, and the loss in this case was so occasioned, and without such fault would not have taken place. In truth the expression 'contributory negligence' in such a case is in-

Gleason vs. Goodrich Transportation Company.

accurate, if it imply any negligence on the part of the company, all the negligence having flowed from one source, viz., the conduct of the passenger, and the whole loss having been occasioned thereby."

It should at all events have been submitted to the jury to consider whether there was any want of ordinary care on the part of the plaintiff in leaving his baggage in the unlocked state-room; and if the jury had found that there was, then their verdict should have been for the defendant.

A question was made upon the trial as to the baggage not having been delivered according to the conditions of certain printed notices which it was alleged were posted up in various places in and about the boat. Upon this point the court charged the jury, that before they could return a verdict for the defendant because there was no delivery according to the conditions of the notices, they must be satisfied from the testimony that the terms of the notice were brought to the knowledge of the plaintiff, and that he *consented* to them. It is objected that this instruction was erroneous in requiring the consent of the plaintiff to the conditions, and, supposing the conditions to have been reasonable and such as the defendant had the right to impose, there can be little doubt, we think, of the error. The consent of the passenger to such conditions is not necessary. It is enough that he knows them, and, that fact being ascertained, compliance with them will be required by law.

No evidence appears to have been given showing that the plaintiff knew the contents of the notices, or was otherwise informed of the regulations of the defendant as to the delivery or receipt of baggage. In *Macklin v. New Jersey Steamboat Co.*, *supra*, it was held that the passenger is under no obligation whatever to read any notice that may be posted on a mast or in a room, or in any conspicuous place. The court said: "It is well settled that common carriers cannot affect or limit their responsibility by putting up notices; and this being the case, it is not obligatory upon the passenger to read them. They

may be employed by the carriers as a means of bringing to the passenger's knowledge any reasonable regulation; but it does not follow from this that it is obligatory upon him to read all such notices; for, if we were to hold that, we would have to hold that whether he read them or not, it being obligatory upon him to read them, he would be chargeable with a knowledge of their contents; and this is further than the law has ever gone."

Another question made in argument here is, whether the "price book" described by the plaintiff in his testimony is to be considered as part of his ordinary personal baggage, for the loss of which the defendant may be held liable as a common carrier. The book, which was in manuscript, contained the prices of the component parts of all Sheffield goods, in the sale of which the plaintiff was engaged, such as files, tools and cutlery, and the cost of the material and of the production of each part towards its completion. It was a book useful to the plaintiff in making sales of the goods in different parts of the country, which was the object of his journey. He used it in his business from time to time as occasion required, for the purpose of ascertaining and correcting values which he could not keep in his head.

It has always been found very difficult to define with accuracy what shall be deemed baggage within the rule of the carrier's liability. The definitions given by Bronson, J., in *Hawkins v. Hoffman*, 6 Hill, 590, and by Judge Story in his work on Bailments, § 499, have generally been recognized as correct. After alluding to the difficulties and several of the definitions which have been attempted, Chief Justice Cockburn lays down the following rule in *Macrow v. Great Western R'y Co.*, L. R., 6 Q. B., 622. He says: "We hold the true rule to be, that whatever the passenger takes with him for his personal use or convenience according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities, or to the ultimate purpose, of the

journey, must be considered as personal baggage. This would include, not only all articles of apparel, whether for use or ornament, but also the gun case or the fishing apparatus of the sportsman, the easel of the artist on a sketching tour, or the books of the student, and other articles of an analogous character, the use of which is personal to the traveler, and the taking of which has arisen from the fact of his journeying. On the other hand, the term 'ordinary luggage' being thus confined to that which is personal to the passenger and carried for his use or convenience, it follows that what is carried for the purposes of business, such as merchandise or the like, or for larger or ulterior purposes, such as articles of furniture or household goods, would not come within the description of ordinary luggage, unless accepted as such by the carrier."

Aided by the foregoing definition, which is as full and accurate as any which has been or perhaps can be framed, it is still difficult in the present case, as it has been found to be in many others, to determine what properly, or whether the book in question, comes under the description of ordinary personal baggage. In *Phelps v. London etc. Railway Co.*, 19 J. Scott, N. S. (115 E. C. L.), 321, the question for the court was, whether an attorney, travelling as a passenger on a railway, was entitled to carry with him in his portmanteau, as ordinary luggage, the deeds and documents which were required as evidence on a trial which he was going to attend, and it was held that he was not. On the other hand, in *Hopkins v. Westcott*, 6 Blatchf., 64, it was held that manuscript books, the property of a student and necessary to the prosecution of his studies, are to be regarded as baggage. In that case SHIPMAN, J., says: " Now it may safely be said, that books constitute to some extent a part of the baggage of every intelligent traveller. Especially is this the case with scholars, students, and members of the learned professions. There is no reason why they should not be under the protection of the law, as against the negligence of carriers, as well as any other portions of their bag-

gage. But, it is said that no case can be shown where the carrier has been held liable for manuscripts. No such case has been cited, and, in my researches, I have found none. But I see no reason for adopting a rule by which they should be excluded, under all circumstances, from the list of articles termed 'baggage.' With a lawyer going to a distant place to attend court, with the author proceeding to his publisher's, with the lecturer travelling to the place where his engagement is to be fulfilled, manuscripts often form, though a small, yet an indispensable part of his baggage. They are carried, as such, in his trunk or portmanteau, among his other necessary effects. They are indispensable to the object of his journey; and, as they are carried with his baggage, in accordance with custom, I see no reason why they should not be deemed as necessary a part of his baggage as his novel or his fishing tackle. In the present case the manuscript books lost are admitted to have been necessary articles for the student at the institution to which he was proceeding. They must, under all the circumstances, be deemed to have been a part of his baggage, for which the defendants are liable."

In *Torpey v. Williams*, 3 Daly, 162, it was held that both money and jewelry form part of a passenger's baggage, for the loss of which a carrier is liable, provided the former does not exceed a sum necessary for traveling expenses, and the latter is confined to such as is ordinarily worn about the person.

It must on the whole be held, we think, that the book in question was an article of personal baggage within the definition above given and the decisions upon the subject. It was a thing of personal use and convenience to the plaintiff according to the wants of the particular class of travelers to which he belonged, and was taken with him as well with reference to the immediate necessities of his journey as to the ultimate purposes of it. It was not an article of merchandise or the like, or any thing designed for use ulterior the purposes of his journey, but a book of memoranda convenient and necessary for

him personally in accomplishing the object of his travel. It was personal baggage, within the definition and rule of law upon that subject.

*By the Court.* — Judgment reversed, and a *venire de novo* awarded.