# Richmond.

## SLAUGHTER V. DENMEAD.

### April 14th, 1892.

1. ACTIONS ON CONTRACTS—*Measure of damages—Instructions.*—Where defendants were not sued as common carriers, but for breach of contract to transport cord-wood by reason whereof the wood was lost by a freshet, the circuit court refused to instruct that "the measure of damages in case of a failure of a carrier to deliver goods according to the contract, and which are lost, is the market value at the time when, and place where they should have been delivered";

HELD:

   Not error.

2. IDEM.—Where nothing in the case tends to show that the damages could reasonably be considered as naturally arising out of the breach of the contract, and the circuit court refused to instruct that "the plaintiff was entitled to recover as damages whatever he may have expended in recovering the washed away wood, if the jury believe the same would not have washed away had the defendants kept their contract;"

HELD:

   Not error.

Error to judgment of circuit court of King William county, rendered May 20th, 1890, in an action wherein the plaintiff in error, J. L. Slaughter, was plaintiff, and Charles Denmead and James H. Denmead, partners, under firm name of Denmead Brothers, were defendants. The object was the recovery of damages for an alleged breach of contract. Opinion states the case.

*H. R. Pollard*, for plaintiff in error.

*George P. Haw*, for defendant in error.

Lewis, P., delivered the opinion of the court.

The contention of the plaintiff was that in June, 1888, he contracted with the defendants, the owners of a steam barge, to transport a quantity of poplar cord-wood from Wormley's and other upper landings on the Pamunkey river, to the White House, at the rate of seventy-five cents per cord; that he had previously contracted for the delivery in Philadelphia of large quantities of such wood, on or before the 15th of December, of the same year; that the alleged contract with the defendants was made with a view to enabling the plaintiff to comply with his contracts to deliver wood in Philadelphia; that in June, 1888, the barge of the defendants was being constructed, and that the plaintiff advanced to the defendants. $300, to enable them to complete it; that the contract bound the defendants to have the barge ready by the 20th of the following November, but that it was not, in fact, completed until the following February; that during the winter and spring of 1889, much of the wood was washed away by freshets in the river, and that the plaintiff expended in efforts to save it $420; that the value of the wood actually lost by the freshets was $1,925, upon which the plaintiff would have realized a profit of $355, had the defendants complied with their contract; and damages were claimed in the declaration to the amount of $3,000.

On the other hand, the defendants offered evidence tending to prove that the transaction between the plaintiff and themselves was simply a loan to them of $300, to enable them to complete the barge, with the understanding that they were to repay the loan in work; that no time was specified for the transportation of the wood, but that in February, 1889, the barge being then completed, they went up the river to bring down a load of wood, and did bring down one load to Turner's Landing; that whilst unloading the wood, they were informed by the agent of the plaintiff that there was a misunderstanding

between himself (the agent) and the plaintiff about the loading and unloading of the wood, and that he would put no more wood on the barge until there was a better understanding about it; that the defendants were anxious to go on with the work, and that had they been permitted to do so, all the wood would have been brought down the river before it was washed away by the freshets in the spring of 1889. There was also evidence tending to prove that but little of the wood had been washed away before the defendants went up the river in February as aforesaid.

The jury found a verdict for the plaintiff for $183.26, which was the sum advanced by the plaintiff, with interest, less the amount of certain offsets proved by the defendants.

The plaintiff then moved to set aside the verdict, as being contrary to the law and the evidence, but the motion was overruled, and judgment entered on the verdict, to which judgment he afterwards obtained a writ of error.

The bill of exceptions sets out the evidence, and not the facts proved, so that the case must stand as on a demurrer to the evidence; and viewing it in that light, it is clear, from what has already been said, that the judgment is right.

It is proper, however, to say that there was no error in the refusal of the circuit court to give to the jury the two instructions asked for by the plaintiff. The first was that " the measure of damages, in case of a failure of a carrier to deliver goods according to contract, and which are lost, is the market value at the time when and the place where they should have been delivered."

This instruction was irrelevant. The defendants were not sued as common carriers, and, besides, there was no evidence tending to prove a delivery to them of any wood other than the one load above-mentioned; and it is settled law that the responsibility of a common carrier for the goods themselves does not commence until there has been a complete delivery to him. 2 Kent, Comm. 604; *Blanchard* v. *Isaacs,* 3 Barb.

388; *Trowbridge* v. *Chapin*, 23 Conn. 595; 2 Am. and Eng. Encyc. of L., p. 803; 2 Pars., Cont. 175.

The second instruction offered was to the effect that the plaintiff was entitled to recover as damages whatever he may have expended in the recovery of wood washed away, if the jury should believe, that the wood would not have been washed away had the defendants kept their contract.

This instruction was also rightly refused, because there is nothing in the case tending to show that the damage mentioned in the instruction could be fairly and reasonably considered as naturally arising from a breach of the contract in question, according to the usual course of things, or as having been in the contemplation of the parties when the contract was made as the probable result of a breach of it. The rule upon this subject is well settled and familiar. *Hadley* v. *Baxendale*, 9 Exch. 341; *Kendall* v. *Commissioners Sinking Fund*, 79 Va. 563; *Griffin* v. *Colver*, 16 N. Y. 489; *West. Union Tel. Co.* v. *Hall*, 124 U. S. 444.

An exception was also taken to the giving of an instruction offered by the defendants, which was as follows, to-wit:

"If the jury believe from the evidence that J. L. Slaughter and the defendants made the contract set out in the first and second counts, or either of them, in the plaintiff's amended declaration, and that the defendants failed to transport pursuant to said contract any of the poplar wood of the said J. L. Slaughter from the Wormley and other landings on the Pamunkey river to the White House, without any fault on the part of the plaintiff or his agent, then the court instructs the jury that the plaintiff is entitled to recover from the defendants under the said contract for their failure to transport such wood of the plaintiff. And if the jury believe from the evidence that the said poplar wood was prior to November 20th, 1888, named in said alleged contract, and at and after that date within the power of the plaintiff, then the difference between the value of the wood not transported at Wormleys

and other landings on the Pamunkey river, and its net value at the White House at the time it would have arrived, if it had been carried according to the contract, is the measure of the plaintiff's damage, the defendants being in no manner liable for the loss of said wood from freshets during the spring of 1889."

As to this instruction, it is enough to say that though awkwardly expressed, it certainly contains nothing injurious to the plaintiff. And as this sufficiently disposes of the case, it follows that the judgment must be affirmed.

JUDGMENT AFFIRMED.