CARLOS GORE *v.* THE NORWICH & NEW YORK TRANSPORTATION COMPANY.

The fact that a passenger by the defendant's steamboat, at the time of paying for his passage and a state-room, wore his overcoat (which he afterward deposited in his state-room, whence it was stolen without fault on his part), cannot be regarded as indicating an *animus custodiendi* on his part, to the exclusion of the carrier, so as to relieve the latter from liability for the loss.

The granting, for compensation, of the use of a state-room, in the absence of notice to the contrary, is a designation of the place in which the passenger may place his ordinary baggage, but not to the exclusion of the carrier, inasmuch as the whole vessel is in the possession and under the control of the carrier, and the *animus custodiendi* of the passenger, as to wearing apparel in temporary use, ceases when the article is placed in the state-room.

The proprietor of a steamboat is liable for wearing apparel stolen from a passenger's state-room, in the absence of negligence on the part of the latter.

APPEAL by the plaintiff from a judgment of the First District Court, dismissing the complaint. The facts which appeared upon the trial are fully stated in the opinion of the court.

*Miller & Peet*, for appellant.

*J. W. C. Leveridge*, for respondent.

BY THE COURT.—BRADY, J.—The plaintiff, on the 30th December, 1865, took passage for Norwich in the defendant's steamer "The City of Boston." He paid the fare, and in addition secured and paid for a state-room, of which he was given the key. He went to his state-room door, opened it, and taking off his overcoat, hung it up in the room, at the same time also leaving his carpet bag. He then left the room, and locked the door. He then spent some time in walking about the saloon of the steamer, and while thus engaged discovered the door of his state-room open, and on entering the room also discovered that his coat was not there. He immediately called

the waiter in charge of the saloon, and a search was made for the coat, but it was not found. The justice, on these facts, found for the defendants. I am unable to distinguish this case in principle from that of *Mudgett* v. *The Bay State Steamboat Co.* (1 Daly, 151). We held in that case that the defendants were liable for the loss of a valise deposited in the plaintiff's state-room by him, and of which he had the key, such loss not having occurred through his negligence. After depositing his valise, he locked the door of his state-room, and while he was temporarily absent therefrom, it was stolen. We held, also, that the mere supervision of baggage by the owner, or possession of the means of entering and using the place of its deposit furnished by the defendants did not, in the absence of negligence on the part of the owner, discharge the carrier from liability in case of loss. That there must exist the *animus custodiendi* on the part of the traveler, to the exclusion of the carrier, as in the case of *Towers* v. *The Utica & Schenectady R. R. Co.* (7 Hill, 47), or such negligence on the part of the former as to charge him with the loss through his own fault. The case in 7 Hill, 47 (*supra*), was one in which it appeared that the overcoat lost was not delivered to the defendants, and that it was lost by the negligence of the plaintiff. In this case, the plaintiff placed his overcoat in the state-room with the rest of his baggage, and locked the door. In doing so, he placed it in the possession of the defendants, and was not guilty of any negligence which resulted in or contributed to the loss. He had a right to do what he did, and the exercise of a right in a lawful manner creates no burdens. The defendants here disclaim liability, upon the ground that the plaintiff's overcoat, being in use at the time the state-room was secured, was not delivered to them, and was not intended to be; that the plaintiff was, and must be regarded as having continued to be, in the actual custody of his overcoat, to the exclusion of the defendants, and therefore that no delivery to them of it was made. The liability of an innkeeper has been likened to that of a common carrier, although if, in an action against the former, it appears that the loss complained of resulted from the claimant's negligence, the action cannot be maintained (*Purvis* v. *Coleman*, 21 N. Y.

111); and the baggage of a passenger entrusted to one whose business it is to transport persons and their baggage, and with whom the owner has embarked, is under the same protection as the goods which are entrusted to a common carrier (*Merrill v. Grinnell*, 30 N. Y. 594). In *Richmond* v. *Smith*, (8 Barn. & Cres. 10), Lord Tenterden said, in reference to a particular place of deposit for goods at an inn, that "if it had been intended by the defendant not to be responsible unless the guests chose to have their goods placed in their bed rooms, or some other place selected by him, he should have said so" (see *Wilson* v. *Halpin*, 1 Daly Rep. 496, in which we declared the right of the innkeeper to insist upon the guest placing his goods where directed); and Bayley, J., said that an innkeeper's liability very closely resembled that of a carrier. He is *prima facie* liable for any loss not occasioned by the act of God or the king's enemies, although he may be exonerated when the guest chooses to have the goods under his own care (see approval of the preceding case in *Piper* v. *Manny*, 21 Wend. 284). The staterooms on board of the defendant's boat are similar to the rooms at an inn. They are not furnished, however, to the traveler on payment of the passage money, or payment of the general price for transportation. They are a specialty, to possess which an extra sum must be paid, and they enable the traveler to enjoy greater privacy and comfort during his transit, being provided in that mode with a place in which he may put his baggage, and employ both at pleasure, incurring only the obligation so to use the room, if he desire to hold the carrier responsible for any loss that may happen, that he be not guilty of negligence. Granting, for compensation, the use of a state-room, in the absence of notice to the contrary, is a designation of the place in which the traveler may put his ordinary baggage, but not to the exclusion of the carrier, inasmuch as the whole vessel is in possession of the carriers, and subject to their control. If similarly deposited at an inn, it would be regarded as *infra hospetium*, and, as we have seen, the obligation and duties of carrier and innkeeper have been declared to resemble each other. The inn is subject to the control of the keeper, and the vessel in this case, as already stated, was under the manage-

Gore v. The Norwich & New York Transportation Company.

ment and control of the defendants. In providing thus for passengers, the carrier must be supposed to contract in regard to personal clothing with reference to its known use to be put on and taken off and changed to suit the comfort or whim of the owner. To hold that wearing an overcoat, when a passage was taken on board of the defendants' boat, and a state-room was secured, imposed the obligation upon the plaintiff to hold that article of wearing apparel entirely in his possession, whether in or out of his state-room, seems to be a legal conclusion that cannot reasonably be entertained. If the traveler, while using any article of dress, such use establishing the *animus custodiendi* for the time being, loses it, it is right that the carrier should be released from liability. But if, after it shall have been used temporarily, as in this case, it be restored to the locality provided for such things generally, or specially as in this case, the use ceases—the *animus custodiendi*, in fact and in law, ceases, and the custody reverts to the carrier. A carrier of passengers for hire undertakes that duty with reference to the reasonable habits and customs of men, for the observance and gratification of which improvements are constantly being made, more particularly on steamboats such as used by the defendants, the appliances and conveniences of which assimilate closely to the comforts and conveniences to be found on the land. The result of these views must be that the plaintiff did not, by wearing his overcoat when he secured his passage, by that act, under the circumstances disclosed by this case, declare his intention expressly or impliedly to retain its custody to the exclusion of the defendants during his transit, and not having done so, he was entitled to recover in this action. Having secured and paid for his state-room, he had a right to use it in the manner he did, and by putting his overcoat in it, not having been guilty of negligence, he placed it in the custody of the defendants, and threw upon them the obligation to protect it from thieves.

The judgment should be reversed. Judgment reversed.