No. 8467.

## WOODRUFF SLEEPING AND PARLOR COACH COMPANY *v.* DIEHL.

SUPREME COURT.—*Conclusions of Law.—Exceptions.—Assignment of Error.*— Where the court's conclusions of law, upon its special finding of facts, are not excepted to nor complained of as errors, no question is thereby presented for the decision of the Supreme Court.

NEGLIGENCE.—*Sleeping Car Company.—Duties and Liabilities.—Occupant of Berth.—Loss of Personal Goods or Money.*—It is the duty of a sleeping car company to protect, by reasonable watch, the occupant of a berth in its car while asleep, in his person and property, and it is liable to such occupant for its negligence or want of reasonable care in the protection of his personal goods and money.

SAME.—*Special Finding of Facts.—Conclusion of Law.*—Where the facts are fully found by the court, and the necessary inference therefrom of the defendant's negligence is plain and certain, the court may state such negligence as a conclusion of law.

From the Superior Court of Marion County.

*A. C. Harris* and *H. H. Poppleton*, for appellant.

*J. E. McDonald* and *J. M. Butler*, for appellee.

HOWK, J.—In this case the appellee, the plaintiff below, alleged in substance, in his complaint, that on the night of the 24th day of July, 1876, the appellant was the owner of a certain car, running upon the line of railroad between the city of Indianapolis, Indiana, and the city of Cleveland, Ohio, which car was used by appellant as a sleeping or lodging car for the lodging of travellers for a specific reward, to be paid the appellant by such travellers as should use the same, being passengers upon the said railroad; that the appellant, so undertaking to provide lodging for travellers, was bound to keep the goods and chattels brought by such travellers into the said car safely and without diminution or loss; that upon the day and year last named, being a passenger upon the line of said railroad, the appellee contracted with the appellant for lodging upon its car for the night, and for $2 then and there paid to it was received into the said car and therein was furnished with lodging by the appellant; that the appellee had with him, among other things, goods, chattels and money necessary and proper to be carried by him for his comfort, to wit: In currency the sum of $111.50, one gold watch of the value of $172, and one gold chain and locket of the value of $50; that during the night the appellee so lodged in the place so provided by appellant, and while he so lodged and abided with the appellant as aforesaid, the appellant and its servants so carelessly and negligently conducted and behaved themselves in not keeping proper care and watch, and in not furnishing sleeping places which could be securely fastened, and in being otherwise careless and negligent, that by and through the said carelessness, negligence and default of the appellant and its servants in that behalf, the said goods and chattels and money were wrongfully and unjustly taken and carried away from the appellee by some person or persons to him unknown, and were and since had been wholly lost to him, and all without any fault or negligence whatever on the part of the appellee. Wherefore, etc.

The cause was put at issue and tried by the court at special

term; and, at the request of the parties, the court made a special finding of the facts, and thereon stated its conclusions of law in favor of the appellee. To the third and fourth conclusions of law the appellant severally excepted, for that neither was authorized nor warranted by the facts specially found, and neither was the law applicable to the facts so found to be true. The court rendered judgment for the appellee in accordance with its conclusions of law; and, on appeal, this judgment was in all things affirmed by the court in general term.

From this judgment of affirmance this appeal is prosecuted; and by a proper assignment of error here the appellant has brought the errors assigned by it in general term before this court. In general term the appellant assigned as errors the following decisions of the court at special term:

1. In overruling its demurrer to appellee's complaint;

2. In sustaining a demurrer to the second paragraph of its answer;

3. In the *third* conclusion of law upon the facts specially found;

4. In the *fourth* conclusion of law upon the special finding of facts;

5. In rendering judgment against the appellant upon the facts found, for that on said facts, and the first and second conclusions of law, the judgment should have been for the appellant; and,

6. In overruling the appellant's motion for a new trial.

In the conclusion of their brief of this cause the learned counsel of the appellant say:

"We submit:

"1. That the demurrer to the complaint in this case should have been sustained;

"2. That, on the facts found by the court, the law is with the appellant; and,

"3. That the motion for a new trial on the evidence should have been allowed."

It is not claimed, however, by the appellant's counsel in

argument, that the court's special finding of facts is not sustained by sufficient evidence. The facts found by the court are substantially the same as those alleged in the complaint. The important and controlling question for decision in this case is this: Upon the facts found by the court, is the appellant, the sleeping car company, liable to the appellee in damages for the value of the personal goods lost by or stolen from him while he was an occupant of the berth or place assigned to him by appellant in its sleeping car? This is the only question discussed by counsel on either side; and, therefore, it is the only question we are required to consider and decide.

The court's special finding of facts and conclusions of law were, in substance, as follows:

"Having been requested by the parties, before entering upon the trial of this cause, to render a special finding of the facts and my conclusions of law thereon, I find the following to be the material facts:

"On the 24th day of July, 1876, the defendant was the owner of and engaged in operating a line of coaches, adapted and used for the lodgement of travellers by night over the route of the Cleveland, Columbus, Cincinnati and Indianapolis Railroad Company, between Indianapolis, Ind., and Cleveland, Ohio. The plaintiff desired to travel to the latter city over said route, holding the pass of the railway company for that purpose. On the evening of the day named he entered the coach of the defendant attached to the rear of the company's train at the depot in Indianapolis, purchased of the defendant's conductor in charge a berth in the coach, and paid therefor $2, the sum demanded for the use of the same during the transit from Indianapolis to Cleveland. The coach was divided in the center lengthwise by an aisle, and on each side was separated into sections, each of which contained two berths, one being the upper and one the lower, and so called. The plaintiff's berth was the upper one on the south side, and in the third section from the rear. The

sections were separated at each end by a cloth partition hung by a cord upon a hook and at right angles with the aisle, and facing the latter were curtains, which were divided in the middle, and which hung down to the floor from a steel rod placed lengthwise in front of the section. The plaintiff retired for sleep about ten o'clock, when the coach was a number of miles on its way, and placed his money, his watch valued at $172, and his chain valued at $50, in his vest. He folded the latter up, placed it under his pillow, and pulled it down so that his shoulder rested upon it, and was speedily asleep. He had $111.50 in money, of which he placed $100 in the inside pocket of the vest, and $11.50 was left in a lower outside pocket therein. The $100 was in his pocketbook, together with various passes and tickets over divers railroads. He did not offer to deliver this property to the conductor or any other servant of the defendant. He wakened in the morning about six o'clock, not having been awake in the interval, and reached Cleveland by that train at seven A. M. On proceeding to dress he looked for his vest, and discovered that it, with the contents, was gone. He at once notified the porter and conductor of the coach of the loss, and while in conversation with the latter, the former brought to them the plaintiff's vest, which, on examination, he had found in the upper berth of the section next but one from plaintiff's, and in the rear thereof, and the occupant of which, a passenger on the coach, had left the coach hurriedly at Crestline, a station already passed. Upon examination of the vest the money, watch and chain were missing, and were never recovered by the plaintiff. The partition curtains referred to could be removed readily by the occupant of the adjoining berth by unhooking and dropping them, and afforded no obstruction not easily removed to invasion. The plaintiff had been engaged as a railroad employee and official for fourteen years, was an experienced traveller, and had passed over the line on defendant's coaches numerous times before. Defendant's coaches are all constructed on the same

plan, had been in use for years, and plaintiff had ridden on Woodruff sleepers before this night over this line a good many times. There were a large number of passengers that night, and the berths were all occupied.

"Another of defendant's coaches was being carried immediately in front of the one described, while one or two ordinary passenger cars of the railroad company were still further forward in the train. The custom of defendant was to keep the rear door of her coaches locked, and the forward door unlocked during transit. The duties of a conductor on her coaches, as prescribed by it, were to collect the berth fares, locate the passengers, and take entire charge of the coach or coaches; and defendant's porter was required to prepare the berths for sleeping purposes, black the boots of the occupants, look after the toilet arrangements, and generally consult the comfort of the passengers in the coach. He was paid no compensation by the defendant, and his only remuneration was such as he received as gratuities from passengers.

"Each sleeping coach was provided with a porter, while but one conductor was supplied for both, and he left the train at Sydney, Ohio, where he went aboard a train going west to Indianapolis.

"It was conceded that the conductor discharged his duties while the coach was passing from Indianapolis to Sydney. From Sydney to Gallion, a distance of eighty-four miles, no conductor was supplied, and the coaches were in charge of the porters. At Gallion the cars and coaches from Indianapolis were attached to a train from Cincinnati; and from that station, until the arrival at Cleveland, the coaches, together with two others on the Cincinnati portion of the train, were in charge of but one conductor.

"During this time the porter of the coach in which the plaintiff slept was chiefly engaged in the forward rotunda, a circular apartment at the end of the aisle, in blacking the boots of the passengers, and was absent from the coach during a few moments of the time. The brakeman employed by

the railroad company, and who rode on the rear coach of the train (that occupied by plaintiff), remained thereon during that time, but was in no way employed by defendant.

"The porter was competent, having had three years' experience. The conductor and porters of the defendant were forbidden by its rules to receive the money, jewelry, and other valuables of the occupants of a coach for keeping during the transit. A printed notice was posted in a conspicuous place in each rotunda of the coach in question, to the effect that it would not be responsible for the personal property of the occupants; but this was not brought to the notice of the plaintiff until after his loss was discovered. The defendant had no interest in the carrying of passengers over the route of the railroad company further than to furnish the sleeping accommodation stated. The plaintiff used due care to protect his property.

"Upon the foregoing facts, I state the following to be my conclusions of law:

"1. That the defendant is not responsible as a common carrier.

"2. That the defendant can not be held to the liability of an inn-keeper.

"3. That the plaintiff's loss was occasioned by the negligence of the defendant in failing to keep a sufficient watch during the night, and to take reasonable care to prevent thefts, and that the plaintiff was without fault.

"4. That the plaintiff should have judgment for the sum of $333.50, with interest on said sum at six per cent. per annum from the 24th day of July, 1876, making the total sum for which plaintiff should have judgment $396.

"John A. Holman, Judge."

In *Pullman Palace Car Co.* v. *Taylor*, 65 Ind. 153 (32 Am. R. 57), it was thought not to be necessary, for the purposes of the case, "to determine whether the appellant is to be regarded as a common carrier, or otherwise." It would seem that this question is not presented for decision in the case at bar; for

Woodruff Sleeping and Parlor Coach Company *v.* Diehl.

the court at special term expressly decided, in its conclusions of law upon the facts found, that the appellant was not responsible as a common carrier, and that it could not be held to the liability of an inn-keeper. These conclusions of law were not excepted to by either party at the special term; nor were they complained of as errors in general term. It is clear, therefore, that the first two conclusions of law have not been brought before this court for review; but it may properly be remarked that it is apparently settled by the decided cases to which our attention has been directed, that sleeping car companies are not liable, either as inn-keepers or common carriers, for personal goods stolen from the person of an occupant of a berth in a sleeping car. *Welch* v. *Pullman Palace Car Co.*, 1 Abb. (N. S.) 352; *Palmeter* v. *Wagner,* 11 Alb. L. J. 149; *Plum* v. *Pullman Sleeping Car Co.*, 13 Alb. L. J. 221; *Pullman Palace Car Co.* v. *Smith*, 73 Ill. 360 (24 Am. R. 258).

The third conclusion of law above quoted is that the appellee's loss was occasioned by the negligence of the appellant in failing to keep a sufficient watch during the night, and to take reasonable care to prevent thefts, and that the appellee was without fault. This conclusion of law was, we think, fully warranted by the facts found by the court. While it may be true that a sleeping car company is not liable either as an inn-keeper or common carrier, yet it can not be held that the company is not responsible to an occupant of a berth in its car for the loss of his personal goods and money resulting from such negligence, as was shown by the facts in this case. The appellant, for a price paid, agreed to furnish the appellee with a berth in its car, in which he might sleep during the night between Indianapolis and Cleveland, and impliedly agreed to keep watch over him while asleep, and take reasonable care to prevent the theft of his goods and money from his person, either by unauthorized intruders or by the occupants of the car. The case of an occupant of a

berth in a sleeping car is very much like that of an occupant of a state-room on a steamboat. In *Crozier* v. *Boston, etc., Steamboat Co.*, 43 How. Pr. 466, the plaintiff, the occupant of a state-room on the defendant's steamboat, retired at night, and in the morning found that his room had been entered, and his watch and chain and pocket-book stolen, and the action was brought to recover the damages sustained thereby. It was said : " In such a case, the passenger is invited, upon the payment of a consideration, to disrobe himself and retire to a couch to sleep ; in other words, he is invited to throw aside all the vigilance and precaution which men habitually practice when awake, and to entrust his person, and whatever men usually carry about their persons, to the care and vigilance which, it must be presumed, they who extend the invitation and receive the reward for the comfort thus afforded, will themselves exercise. Certainly, few persons would dare trust themselves to sleep in a state-room on board a steamboat unless they supposed those in charge of it were under an obligation to exercise the utmost vigilance." This language, it seems to us, is as applicable to the occupant of a berth in a sleeping car as to the occupant of a state-room on a steamboat. In the case cited it was held that the steamboat company was liable to the occupant of the state-room, in the absence of negligence or fraud on his part, for the value of the personal goods stolen from his person while asleep during the night in his state-room.

In the case at bar, it was found by the court as facts, that two sleeping cars in the train were under the charge of one conductor, and that he left the train in the night time ; that for the distance of eighty-four miles there was no conductor in charge of the two cars, and that thereafter one conductor had charge of four cars. Each car had a porter, but he had duties to perform in the rotunda of car, which were inconsistent with his keeping watch over the sleeping occupants of the car ; and for a part of the night the porter attached to the car in which the appellee was sleeping was absent from the

car.   In *Blum* v. *Southern Pullman Palace Car Co.*, ·3 Cent. L. J., p. 591, it was held that a sleeping car company was bound, not only to furnish its guest a berth, but to keep a watch during the night to exclude unauthorized persons from the car, and to take reasonable care to prevent thefts.   The court also held that, in case of loss occasioned by negligence in this regard, the company is liable for such articles as a passenger usually carries about his person, and such sum of money as may be reasonably necessary for his travelling expenses.   So in *Palmeter* v. *Wagner, supra,* the court held, that in the ordinary railway car a passenger may sleep, but it is at his own risk, but when he gets into a sleeping car, and pays for sleeping, the passenger is not expected to keep awake, to take care of himself and his property.   Sleeping car companies undertake to do that which the railroad companies find injudicious.   This decision is based on the ground that sleeping car companies are not insurers, but are bound, by reasonable watch, to protect a passenger in his person and property while asleep.

In 13 Alb. L. J., p. 221, after summing up the adjudged cases on the subject under consideration, the editor says : " The true rule would seem to be that the sleeping car company is liable for the want of reasonable care in the protection of the property of its guests."   In Thompson on Carriers of Passengers, p. 531, after stating that sleeping car companies are to be regarded neither as inn-keepers nor as common carriers, the author proceeds : " What, then, shall be the measure of responsibility of these companies ?   All the cases seem to agree that their duty is to exercise at least ordinary care for the security of passengers' valuables.   Of course, this care must be in proportion to the danger reasonably to be apprehended.   Such danger is greater at night, while the passenger is asleep, than in the day time, when he is awake and can care for himself.   This point is well stated in a case previously noticed : ' The scope of the liability of companies of this kind, so far as I know, has never been judicially deter-

mined. It is undoubtedly the law that where a passenger does not deliver his property to a carrier, but retains the exclusive possession and control of it himself, the carrier is not liable in case of a loss,—as, for instance, when a passenger's pocket is picked, or an overcoat or satchel is taken from a seat occupied by him. Upon this theory, it is insisted by defendant that it can not be held liable for negligence, inasmuch as the clothing and effects of its guests are never formally delivered to it. I can not for a moment accede to this proposition. It is scarcely necessary to say that a person asleep can not retain manual possession or control of anything. The invitation to make use of the bed carries with it an invitation to sleep, and an implied agreement to take reasonable care of the guest's effects while he is in such a state that care upon his own part is impossible. There is all the delivery which the circumstances of the case admit. I think it should keep a watch during the night, see to it that no unauthorized persons intrude themselves into the car, and take reasonable care to prevent thefts by the occupants.'" *Blum* v. *Southern Pullman Palace Car Co., supra;* Hutchinson on Carriers, section 60, note 2.

In the case at bar, the facts were very fully found by the court, and the necessary inference therefrom of the appellant's negligence was so plain and certain, that the court was authorized, we think, to state such negligence as a conclusion of law. *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261 (38 Am. R. 134). So, also, the facts were so fully found in regard to appellee's acts and conduct, as to justify the court in stating, as a conclusion of law, that the appellee was without fault.

We find no error in the record which requires the reversal of the judgment below.

The judgment is affirmed, with costs.