HENDERSON *v.* LOUISVILLE & N. R. Co.[1]

*(Circuit Court, E. D. Louisiana. April 9, 1884.)*

1. COMMON CARRIERS—LOSS OF PARCEL.
    A railroad company, a common carrier of goods and persons, is not responsible for the loss of a parcel of valuables, carried in the hand of a passenger, falling out of an open window, without any fault of the carrier, for the reason that upon notice or demand it did not stop a train to recover the parcel until the train arrived at one of the usual and advertised stations.

2. SAME—LIABILITY LIMITED BY CONTRACT.
    Beyond his contract, the common carrier is under no greater obligations to passengers than is the rest of the community.

3. SAME—MORAL OBLIGATION—ACTION.
    A disregard of obligations which are moral and not legal gives no basis for a claim for damages.

Cause Heard on the Petition and an Exception, which, under the practice in the state of Louisiana, has the effect of a demurrer.

*O. B. Sansum* and *E. Sabourin,* for plaintiff.

*Thos. L. Bayne* and *George Denegre,* for defendant.

BILLINGS, J. The petition sets forth that the plaintiff was a passenger upon the defendant's road, in one of defendant's coaches, forming a part of one of its regular trains, which was run by a conductor by it appointed, from the town of Pass Christian to the city of New Orleans, and lawfully had with her a "certain leathern bag," which contained money, diamonds, and jewelry, in all to the value of $9,875, carrying said bag in her hand; that "while the plaintiff was closing a window of the car in which she was riding, to stop a fierce

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

curre it of air which came in upon her," "said leathern bag and its conte its, *by some cause unknown to the plaintiff, accidentally* fell from her hand through said open window and upon defendant's road;" that there ipon the plaintiff communicated to the said conductor of the defendants the loss of said bag and the value of its contents, and requested him to stop said train that she might recover the same, which he refused to do, but carried the plaintiff on for a distance of three miles to B: y St. Louis, from which place she dispatched a trusty person back to the place where said bag and its contents were dropped, but befor e said person could arrive at said place the said bag had been stole i and carried away, whereby the plaintiff lost the value of said conte nts, for which the plaintiff prays judgment.

The question of law presented is, was the defendant, who was a comi ion carrier of goods and persons, to-wit, a railroad company, respon iible for the loss of a parcel of valuables carried in the hand of a pa senger falling out of an open window without any fault of the carri er, for the reason that upon notice and demand it did not stop a train to recover the parcel until the train arrived at one of the usual and idvertised stations. The propositions of law which the plaintiff musi maintain in order to allow an affirmative answer to this question ire two: (1) That the plaintiff had a right to take into the car with her the bag and its contents, and to carry the same in her hand or in some other way under her personal supervision, and in her persona custody; and (2) that the defendants, as an incident of their cont act to carry the plaintiff, entered into some further contract with reference to the carriage and safety of the same which involved liabi ity in case of loss or separation without fault on defendant's part from the plaintiff's possession. The first proposition is correct the second cannot be maintained. The plaintiff, considering the vell-known habits and requirements of passengers in the United Stat is at this day, had an undoubted right to take with her her jewelry and money in her journey from her summer to her winter residence. They were in bulk and character such that they could be take i into the car without any inconvenience either to the defendants or the other passengers. Indeed, they were of such bulk and chai acter as to altogether escape observation. But this was simply *a pe mission;* there was no obligation, except as connected with some defa alt or wrong on the part of the railroad in the carrying of the plai itiff. If the loss had arisen in consequence of the defendant's fail re, diligently and with proper skill, to carry the plaintiff, a different question would have arisen. For in that case there would have been a violation of a contract, and the sole inquiry would have been as to whether the loss of the valuables carried in the hand could have been a ground for the recovery of damage. But the case shows that the plaintiff was in all things, so far as related to herself, diligently and with proper skill, transported from the point to the point mentioned in her passage. There remains then the question whether the

defendants assumed any responsibility with reference to the valuables other than that the plaintiff herself should be carried, and that the valuables should not be interfered with by any act or fault of theirs. This contract was completely performed. Notwithstanding this performance the plaintiff, through her power of locomotion and not at all through any default or act of defendant, found herself separated from her valuables, and the force of plaintiff's argument was that the defendant was under obligation to stop the train to enable her to recover them. There was no duty to do anything at all towards recovery, unless there had been some violation of the undertaking to carry, and there had been none. It is as if the plaintiff had, by a theft or other casualty, preceding her journey, been separated from these same valuables, and recognizing them lying on the defendant's road, insisted that the conductor should stop the train in order to allow her to regain them. The appeal was to a party who was under no legal obligation to aid in the recapture, and stood upon grounds of kindness and Christian charity to be decided by the person appealed to by reference to moral and not legal considerations, and if refused caused *damnum absque injuria.*

In all the actions against the common carrier for *nonfeasance,* whether the action is in *assumpsit* or on the case, the gist of the action is the neglect to perform a duty which is created and measured by the contract. Beyond or outside of the contract the carrier is under no greater obligation to the shipper or passenger than is the rest of the community. The doctrine, "*Sic utere tuo ut alienum non lædas,*" can never have the effect to transfer from one contracting party to another a risk of injury or loss which had by the plain words or unmistakable implication of the contract itself been lodged. In such a case the party who had assumed the resposibility must bear the damage or loss. Here the bag and its contents, so far as they depended upon its custody and location within the car, were by the contract of passage to be retained in the care of the plaintiff, and any disposition of them by her, which turned out to be unwise or simply unfortunate, and resulted in loss, concerned the plaintiff alone. Consistently with all the circumstances set forth in the petition, the continuance of plaintiff's possession of the bag and its contents, and their restoration to her possession after it had been interrupted, were matters which the plaintiff herself undertook to care for to the exclusion of responsibility on the part of defendant. In this respect the defendant violated no obligation, for none existed.

The exception must be maintained, and the petition dismissed.

---

The principal case presents the interesting question of the liability of a railway company, steam-boat man, or other common carrier, for property lost, injured, or destroyed while in transit in possession of a passenger.

1. GENERAL LIABILITY. As a general rule every one is liable for his negligence and its consequences. *Sic utere tuo ut alienum non lædus* is the

maxim. There is no doubt of the soundness or justice of this maxim. Its application to such a case as the principal one has been brought in question.[1] An agent of the plaintiff went upon the defendant's train with $4,000 of plaintiff's money. During the transit the train fell through a bridge, and the agent and the $4,000 were burned in the wreck. It was sought to hold the company liable on two grounds: (1) Under the maxim *sic utere*, etc.; and (2) as a common carrier. Scott, J., pointed out that the first ground of liability relied upon was not based upon any contract between the parties, nor upon any liability of the company as a common carrier, but only sought a recovery on the ground that the defendant negligently so conducted its business in running its train as to destroy plaintiff's property. "Yet," said he, "it proceeds on the important assumption that plaintiff's money was lawfully where it was at the time when the catastrophe occurred; that is, that McElroy was a passenger on defendant's train of cars, had a right to carry the money with him, and, without notice to defendant, to subject it to such perils as might arise from the negligence of defendant's servants in the management of the train. Had the money not been in the defendant's car it would not have been subjected to the peril which caused its destruction; and the question whether it was lawfully there necessarily involves a consideration of the second proposition. Damage resulting from the negligence of another will not in all cases constitute a cause of action. Should A., through negligence, burn his own house, and with it the property of B., placed there without the knowledge or consent of A., we apprehend B. could not hold A. liable for the loss. We cannot, therefore, ignore the fact that the carrying of the money in defendant's car was an essential element in the circumstances occasioning the loss, nor the fact that it was so carried by a person whose only right to be there was in virtue of his character as a passenger. * * *"

"We do not call in question the right of a passenger to carry about his person, for the mere purpose of transportation, large sums of money, or small parcels of great value, without communicating the fact to the carrier, or paying anything for the transportation. But he can only do so at his own risk, in so far as the acts of third persons, or even ordinary negligence on the part of the carrier or his servants, is concerned. For this secret method of transportation would be a fraud upon the carrier, if he could thereby be subjected to an unlimited liability for the value of the parcels never delivered to him for transportation, and of which he has no knowledge, and has, therefore, no opportunity to demand compensation for the risk incurred. No one could reasonably suppose that a liability which might extend indefinitely in amount would be gratuitously assumed, even though the danger to be apprehended should arise from the inadvertent negligence of the carrier himself."[2]

Nothing need be added to the reasoning of this case. It appears conclusive, and establishes the principal case as well decided. The moral of both cases is that it is unwise for passengers to carry valuables and large sums of money with them upon the public conveyances. The proper way to transport those articles is by express. Then their safety is provided for and loss insured against.

2. LIABILITY AS A COMMON CARRIER. As a general rule, there must be a delivery to a carrier of a passenger's baggage, in order to hold the transporter responsible for its loss or damage. He should also be informed of the value of the baggage, and of its nature, in case any dangerous machine or compound be packed in it. Then the carrier may take adequate measures to compensate himself for carriage, and to guard against loss or damage. Delivery, actual or constructive, is always essential to charge the carrier;[3] and

---

[1] First Nat. Bank v. M. & C. Ry. Co. 20 Ohio St. 278.

[2] Per Scott, J., First Nat. Bank v. M. & C. Ry Co. 20 Ohio St. 279.

[3] The R. E. Lee, 2 Abb. (U. S.) 49; Weeks v. N. Y., etc., R. Co. 9 Hun, 669; Gleason v. Goodrich Transp. Co. 32 Wis. 85.

the delivery must be to one having authority to receive the baggage, else it will not suffice.[1]

The courts have differed as to what constitutes a delivery of baggage to a carrier, especially in cases where articles have been placed in the state-room of the passenger upon a steam-boat. Where jewelry, usually worn by two lady passengers upon a steam-boat as a part of their apparel, was left by them in their state-room in a carpet bag with other articles of personal use, and stolen while they were at supper, held, that the steamer was not liable therefor."[2]

In *Crystal Palace* v. *Vanderpool*[3] a passenger on a steam-boat wore a gold watch and chain, a diamond breast-pin, and carried a sum of money. On retiring he complained of the state-room lock being out of order, and was told there was no way to fasten the door but to put his baggage and a chair against it, which he did and retired. In the morning he discovered his valuables had been stolen. Held, that the company were not liable, the valuables not having been delivered to the officers for safe-keeping.

In *Del Valle* v. *Richmond*[4] a lady carried jewels in her pocket. It was cut open and the jewels stolen while her dress hung in her state-room, upon her retiring at night. Held, that the company was not liable, the evidence satisfying the court that she was guilty of contributory negligence in not depositing the jewels with the clerk. The jewels were worth about $6,015. "The rule seems to be generally adopted and sanctioned," said the court, "that in order to render the carrier liable for losses of baggage or goods shipped as freight they must be delivered and intrusted to the carrier; and in regard to baggage the liability does not extend beyond the value of reasonable articles of apparel or convenience, and for such sum as might be deemed necessary for his expenses, according to the passenger's condition in life and the journey undertaken by him."

Plaintiff took passage on a steam-boat, and, upon purchasing his ticket, asked for a key to the state-room assigned him; but being informed that they gave no keys, he replied that he did not care for that,—all he wanted was to place his baggage in some room where it would be safe while he went down to get his trunk of samples checked. He deposited his valise in the unlocked room, calling the attention of two or three cabin or saloon boys to the fact, asking their opinion whether it would be safe, and receiving an affirmative answer. When he returned to his room, after an absence of three-quarters of an hour, the valise was gone. There was a porter or checkman on the boat, whose duty it was to receive and check baggage, which plaintiff knew. There was no evidence in the case of any custom of travelers to deposit their baggage in the manner plaintiff did; nor of any usage of carriers by steam-boat, or of defendant in particular, to accept delivery in that way; nor of any specific direction or assent on the part of the carrier; nor was there any finding by the jury that the carrier was guilty of negligence in not providing the state-room door with a suitable lock and key, according to the custom of such carriers, and that such negligence caused the loss. Held, that there was no delivery of the valise to the carrier, and he was not liable for the loss.[5]

Where an emigrant lashed his trunk to his berth on the steam-ship and retained exclusive possession of it during the voyage, the steam-ship proprietors were held not liable for loss of goods from it.[6]

There is, however, a heavy weight of authority holding steam-boat men liable for property negligently lost or stolen from state-rooms. Thus, where plaintiff took passage on the steamer of the defendants, and paid her fare,

[1] Gleason v. Goodrich Transp. Co. 32 Wis. 85.
[2] The R. E. Lee, 2 Abb. (U. S.) 49.
[3] 16 B. Mon. 307.
[4] 27 La. Ann. 90.
[5] Gleason v. Goodrich Transp. Co. 32 Wis. 85.
[6] Cohen v. Frost, 2 Duer, 335.

which included her board on the passage, a state-room, and lodging, she was assigned to the room by the proper officer of the boat; and another lady, a stranger to the plaintiff, was afterwards also assigned to the same room. Plaintiff, when she retired to bed, left her dress, in the pocket of which was her *porte-monnaie*, with some personal jewelry, and money for her traveling expenses, on an upper unoccupied berth. During the night, while plaintiff was asleep, the money and jewelry were stolen, but whether by some one from without or by the other lady within did not conclusively appear, though the evidence tended to show it was done from without. Held, company liable.[1]

The proprietor of a steam-boat has been held liable for wearing apparel stolen from a passenger's state-room, in the absence of negligence on the part of the latter.[2]

There has been considerable discussion of the liability of steam-boat men in such cases, the best of which is by Judge CHRISTIANCY, who said: "But when a steamer is fitted up with regular sleeping apartments, and all the appliances for boarding and lodging her passengers as at an inn, and the owners or managers hold themselves out to the traveling public as furnishing such accommodations, and by these superior advantages induce travelers (as they naturally must) to prefer this to the less comfortable mode of traveling by railroads and stage-coaches, or even by vessels without such accommodations, when they receive the fare of a passenger, which includes not only his passage but his board and sleeping-room and bed, and when that room is assigned to him and he retires to it for the night, the whole transaction, it seems to me, carries with it an invitation to make use of the room and the bed for the purposes and in the manner for which they were obviously designed; in other words, to lay aside his clothing and to go to sleep there. And unless he is expected to sleep with his eyes open, and his faculties upon the alert, he is invited to lay aside all the vigilance he would be expected to exercise when awake, and to trust himself and his clothing, and such money and property as he may have about him, and as it is usual for passengers to carry in their clothing, to the protection afforded by the room and the vigilance to be exercised by those in charge of the boat. And the latter must, in the absence of any usage, request, or notice to the contrary, be held to assent that the passenger shall leave such clothing and contents at any convenient place in the room, instead of having to call the steward, clerk, or other officer of the boat to take it into his actual or manual custody,—a proceeding which (as it must take place after the passenger is undressed) would be somewhat awkward, in the case of a lady passenger, at least; and having been thus invited to rely upon the protection of his room, and their vigilance instead of his own, the invitation, it seems to me, carries with it an assurance that they will be responsible in the mean time for all losses of such clothing and contents from which he might by his own vigilance have protected himself when up and awake. If they do not thereby assume this responsibility, then it is no "figure of speech," but a literal truth, to say that by their invitation the passenger has been lulled into a false security."[3]

Giving the key of a state-room to a passenger does not release a steam-boat proprietor from liability any more than giving the key of a room to a guest at a hotel would release the proprietor of the hotel.[4]

Undoubtedly a steam-boat company may protect itself from liability by notice that it will not be responsible for property left in the state-room of travelers.[5] But a regulation forbidding a passenger upon a steam-boat from

---

[1] McKee v. Owen, 15 Mich. 115.

[2] Gore v. Norwich & N. Y. Transp. Co. 2 Daly, 254.[*] See, also, Mudgett v. Bay State Steam-ship Co. 1 Daly, 151.

[3] McKee v. Owen, 15 Mich. 115.

[4] Mudgett v. Bay State Steam-ship Co. 1

Daly, 151. See, also, Gore v. Norwich & N. Y. Transp. Co. 2 Daly, 254.

[5] Mudgett v. Bay State Steam-ship Co. 1 Daly, 151; Gleason v. Goodrich Transp. Co. 32 Wis. 85.

talking his baggage with him into his state-room or private chamber, except at his own risk, is not a reasonable regulation, so far as it would apply to light baggage or hand-satchels containing articles required for present use in travel, and cannot exonerate the carrier from liability for the loss of such baggage when taken by the passenger to his room in disregard of the regulation.[1]

The owner of a steam-ship is not liable as a common carrier for a watch worn by a passenger on his person by day, and kept by him within reach at night, whether retained upon his person, or placed under his pillow, or in a pocket of his clothing hanging near him.[2] And generally carriers are not liable as such for money stolen from the persons of passengers on their conveyance, unless the thief be a dishonest employe knowingly employed by the company.[3]

"Passengers by steamer, while up and awake, or when or where they ought and are expected to be awake, like passengers by railroad or stage-coach, must be expected to rely upon their own vigilance for protection against larceny from their persons; and it is well understood by all that in such case the property carried upon the persons of passengers is in their own keeping. And it would be equally clear that if a passenger, while in a general cabin or elsewhere about the boat in any place (or at a time) not specially intended or designated for sleeping, (but where the other passengers are indiscriminately admitted, or passing and repassing,) suffer himself to fall asleep, he does so at his own peril; because, having intelligence and a will of his own, and moving about at his own pleasure, and choosing his own associates, he is generally fully capable of protecting himself; and no degree of vigilance on the part of the carriers could afford him that protection, if he will neglect to make use of his own faculties for that purpose, or allow himself to fall asleep at an improper place or time, or carelessly put himself in contact with improper persons."[4]

A number of cases present instances of the loss of property in possession of passengers upon railway trains. A passenger's portmanteau was at his request placed in the carriage with him. He got out, failed to find the right carriage again, and finished the journey in another. The portmanteau was robbed of a portion of its contents by a subsequent occupant of the carriage. It was held that the company were not liable. The company's contract to carry the baggage safely was held to be subject to the implied condition that the passenger take ordinary care of it, and if his negligence causes the loss the company are not responsible.[5]

A passenger carried a number of coats cut by the tailor ready for sewing, put up in a bundle in such a manner that the contents were not apparent. This bundle, together with a bandbox, she took with her ostensibly as personal baggage. She gave the defendants no notice that it was not such baggage, although she had ample time to do so before the train left. Held, that the company were not liable for the loss of the goods, there being no agreement to carry them either as goods or freight.[6]

Upon the arrival of one of defendant's trains at New York the car in which plaintiff was a passenger was detached from the others and allowed to remain unguarded while awaiting the arrival of horses, by which it was to be drawn to the station. The plaintiff got up and went towards the door to ascertain the cause of the stoppage, when he was seized by three men, who had just entered the car, and robbed of securities of the value of over $16,000. Held, that the company was not liable.[7]

[1] Van Horn v. Kermit, 4 E. D. Smith, 453; Mackin v. N. J. Steam-boat Co. 7 Abb. Pr. (N. S.) 241.
[2] Clark v. Burns, 118 Mass. 275.
[3] Abbott v. Bradstreet, 55 Me. 530.

[4] Per Christiancy, J., in McKee v. Owen, 15 Mich. 115.
[5] Talley v. G. W. Ry. Co. L. R. 6 C. P. 44.
[6] Smith v. Railroad Co. 44 N. H. 325.
[7] Weeks v. N. Y. & N. H. R. R. Co. 9 Hun, 669.

In *Le Conteur* v. *L. & S. W. Ry. Co.*[1] a passenger delivered a chronometer to a porter of the company, who deposited it under the seat in the carriage in which the passenger rode, from whence it was lost. The company was held liable.

A lady became a passenger by a first-class carriage to be conveyed from A. to B. Her dressing-case was placed in the carriage under the seat. On the arrival of the train at B. the porters of the company took upon themselves the duty of carrying the lady's luggage from the railway carriage to the hackney carriage, which was to convey her to her residence. On her arrival there the dressing-case was missing. Held, that the duty of the defendants as common carriers continued until the luggage was placed in the carriage, and that they were liable.[2]

The plaintiff, a passenger by railway, brought with him into the carriage a carpet-bag containing a large sum of money, and kept it in his own possession until the arrival of the train at the London terminus. On alighting from the carriage, with the bag in his hand, the plaintiff permitted a porter of the company to take it from him for the purpose of securing for him a cab. The porter having found a cab within the station, placed the carpet-bag upon the foot-board thereof and then returned to the platform to get some other luggage belonging to the plaintiff, when the cab disappeared and the bag and contents were lost. Held, company liable.[3]

In the three foregoing cases the baggage, although in close proximity to the passenger during the transit, was in fact in the custody of the carrier. The law is that in order to discharge the carrier from liability, there must either exist the *animo custodiendi* on the part of the traveler to the exclusion of the carrier, or he must be guilty of such negligence as discharges the latter from his general obligation.[4]

What is the liability of sleeping-car proprietors for the property of passengers lost or injured during their passage?

A sleeping-car company is not a carrier, either public or private. It carries no one. The transportation not only of sleeping-car passengers, but of the sleeping car itself, is done by the railway company. It and not the sleeping-car company contracts for the carriage and receives the compensation therefor. It should therefore assume the responsibilities of carrier. Nor is a sleeping-car company an innkeeper.[5] "It does not, like an innkeeper, undertake to accommodate the boarding public indiscriminately with lodging and entertainment. It only undertakes to accommodate a certain class, those who have already paid their fare and are provided with a first-class ticket, entitling them to ride to a particular place. It does not undertake to furnish victuals and lodging, but lodging alone, as we understand. * * * The innkeeper is obliged to receive and care for all the goods and property of the traveler which he may choose to take with him upon the journey; appellant does not receive pay for, nor undertake to care for, any property or goods whatever, and notoriously refused to do so. The custody of the goods of the traveler is not, as in the case of the innkeeper, accessory to the principal contract to feed, lodge, and accommodate the guest for a suitable reward, because no such contract is made."

"The same necessity does not exist here as in the case of a common inn. At the time when this custom of an innkeeper's liability had origin, wherever the end of the day's journey of the traveler brought him, there he was

[1] L. I . 1 Q. B. 54.
[2] Richards v. London B. & S. C. R. Co. 7 Man., G & S. (62 E. C. L.) 839.
[3] Butcher v. L. & S. W. R. Co. 16 Com. B. 12.
[4] Muggett v. Bay State Steam-ship Co. 1 Daly, 11 ; Robinson v. Dunsmore, 2 B. &

P. 416 ; Burgess v. Clements, 4 M. & Sel. 310 ; Tower v. Utica & S. R. Co. 7 Hill, 47 ; East India Co. v. Pullen, 1 Strange, 694 ; Gore v. Norwich & N. Y. Transp. Co. 2 Daly, 254.
[5] Pullman P. C. Co. v. Smith, 73 Ill. 360.

obliged to stop for the night and intrust his goods and baggage into the custody of the innkeeper. But here the traveler was not compelled to accept the additional comfort of a sleeping car; he might have remained in the ordinary car, and there were easy methods within his reach by which both money and baggage could be safely transported. On the train which bore him were a baggage and an express car, and there was no necessity of imposing this duty and liability on appellant." [1] This reasoning certainly appears satisfactory, and there are other cases sustaining the view that sleeping-car companies are neither carriers nor innkeepers, nor liable as such. [2] This is not saying, however, that a sleeping-car company is under no liability for the negligent loss or damage of its passengers' property. As laid down by the supreme court of Pennsylvania, [3] it is the duty of a sleeping-car company to use reasonable and ordinary care to prevent intruding, picking pockets, and carrying off the clothes of passengers while asleep. Whether such care was exercised under the circumstances is a question for the jury. Where the regulations require a watchman to stay in the aisle of the car continuously until danger is over, and he goes out of the aisle, even for a very few minutes, and during that time a robbery occurs, if the jury believe that if he had been in his place of observation it would not have occurred, without detection, the company is liable. The watching must be continuous and active. It may be proved, too, that another person was robbed on the same car on the same night, as bearing upon the question of negligence.                ADELBERT HAMILTON.

*Chicago.*

[1] Pullman P. C. Co. v. Smith, supra.
[2] See Nevin v. Pullman P. C. Co. 106 Ill. 122; Woodruff S. C. Co. v. Diehl, 84 Ind. 474; Pullman P. C. Co. v. Gardner, (Pa. Sup. Ct. Nov. 1883,) 18 Cent. Law J. 14; Diehl v. Woodruff, 10 Cent. Law J. 66, (Indiana Sup. Ct;) Blinn v. Pullman P. C. Co. (U. S. C. C. W. D. Tenn.) 3 Cent. Law J. 591; Palmeter v. Wagner, 11 Alb. Law J. 221.
[3] Pullman P. C. Co. v. Gardner, supra.