(9 Misc. Rep. 25.)

### ADAMS v. NEW JERSEY STEAMBOAT CO.

(Common Pleas of New York City and County, General Term.   June 4, 1894.)

CARRIERS OF PASSENGERS—STEAMBOATS—LIABILITY AS INNKEEPER.

> Where money for traveling expenses carried by a passenger on a steamboat is taken from his stateroom at night, the owner of the boat is liable therefor, without proof of negligence on his part, the liability of a carrier by water being analogous to that of an innkeeper.

Appeal from trial term.

Action by Harry C. Adams against the New Jersey Steamboat Company.   There was a judgment in favor of plaintiff, and defendant appeals.   Affirmed.

The action was brought to recover a certain sum of money alleged to have been lost to plaintiff when a passenger upon one of defendant's steamboats. This money was retained by plaintiff in the stateroom assigned to him by the defendant upon his taking passage, and during the nighttime an article of clothing containing this property was taken from the stateroom by some unknown person.   Such article of clothing was afterwards found in another room upon the boat, but the money had been abstracted.   The door of the stateroom was provided with a lock, and the window blind was fitted with a catch.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

W. P. & R. K. Prentice (W. P. Prentice, of counsel), for appellant. Gibson & Davis (William J. Gibson, of counsel), for respondent.

BISCHOFF, J.   The most important point in the case, and that towards which the argument of counsel upon this appeal has been principally directed, relates to the correctness of a rule with regard to proof, followed by the learned trial judge in his charge to the jury, and in his disposal of requests to charge and of a motion to dismiss the complaint.   The rule referred to was, in effect, that the defendant company was liable for the loss of plaintiff's money to an amount which might reasonably be carried for traveling expenses, retained by him in his designated stateroom, without proof of negligence upon the part of defendant, and that, upon showing that the loss occurred without contributory negligence on his own part, plaintiff established a prima facie case, the contract of carriage and the assignment of the stateroom in question being undisputed.   The above rule is in conformity with decisions rendered by this court in the cases of Mudgett v. Steamboat Co., 1 Daly, 151 (decided in 1861), Gore v. Transportation Co., 2 Daly, 254 (decided in 1867), and Macklin v. Steamboat Co., 7 Abb. Pr. (N. S.) 229 (decided in 1869), where it was held that a liability analogous to that of an innkeeper attached to the class of carriers to which this defendant belongs, with regard to a loss of personal effects taken into his stateroom by the passenger.   In these cases the rule was clearly so expressed, and the facts in the present case afford no basis for a distinction in applying the principle there declared.   This same rule of liability was held to obtain in Van Horn v. Kermit, 4 E. D. Smith, 453, and Crozier v. Steamboat Co., 43 How. Pr. 466, and has not as yet been disapproved in this state, so far as research has disclosed.

Appellant relies, however, upon the authority of Carpenter v. Railroad Co., 124 N. Y. 53, 26 N. E. 277, where the court of appeals held that sleeping-car companies are not liable, as "carriers or innkeepers," for the loss of a traveler's personal effects, when the same are retained by him near his person upon retiring for the night. Of course, in such a case, the word "carrier" had reference to a liability for baggage actually placed within the carrier's custody, it being the general rule that such retention of his effects by the traveler renders the carrier only liable for their loss when occurring by reason of its negligence. Tower v. Railroad Co., 7 Hill, 47.

The question then arises, does the adoption of such a rule with regard to sleeping-car companies in effect overrule the case where an opposite principle of liability has been applied to these carriers by water? The rule absolving a sleeping-car company from liability as an innkeeper in the regard considered is not new to the jurisprudence of this state, for the principle was so declared by the superior court of Buffalo as early as 1874, in the case of Welch v. Car Co., 16 Abb. Pr. (N. S.) 352. The courts of our sister states also, whenever the question has arisen, have uniformly enunciated the same rule,—Car Co. v. Smith, 73 Ill. 360; Coach Co. v. Diehl, 84 Ind. 474; Railroad Co. v. Handy, 56 Am. Rep. 846, and note at page 852; Lewis v. Car Co., 143 Mass. 267, 9 N. E. 615, and 56 Am. Rep. 852, note; Bevis v. Railroad Co., 56 Am. Rep. 850, note, where mention is made of the unanimity with which the rule has been adopted (see cases there cited); 22 Cent. Law J. 53; 48 Alb. Law J. Oct. 28, 1893, p. 354,—the authority which appears to have been a leading case upon the subject being Car Co. v. Smith, supra, decided in 1874, a few months prior to the Welch Case. And here it is expedient to note the grounds upon which the decisions have proceeded. In the first place, sleeping-car companies are not carriers at all. The railroad company issuing the ticket to the traveler is the carrier, and the sleeping-car company merely supplies extra accommodation to the parties contracting with the carrier for transportation, upon the payment of a certain separate consideration. Moreover, were these companies to be held to the responsibility of carriers, they could not be burdened with liabilities, as insurers, for loss of the passengers' effects as "baggage," for they take no custody of baggage in any way, this duty being assumed by the railroad company,—the actual carrier. See 22 Cent. Law J. p. 52. Failing this responsibility, then, as carriers with custody, a liability as insurer has been sought to be applied to these companies by reason of their analogy to innkeepers; but the courts have denied that the rule relating to innkeepers should be so extended, this denial proceeding upon the ground that, in the absence of precedent for applying the common-law rule principle in that regard to a new case arising out of circumstances and emergencies developed by the progress of society, the application should not be made, unless it appears to be essential to the enforcement of justice (Welch v. Car Co.; Car Co. v. Smith, supra); and various distinctions have been pointed out, as existing between these companies and the innkeeper, which should oppose the application to the former of the latter's common-law

liability. Thus, in the case last cited, it is said, with reference to a sleeping-car company:

"It does not, like the innkeeper, undertake to accommodate the traveling public, indiscriminately, with lodging and entertainment. It only undertakes to accommodate a certain class,—those who have already paid their fare, and are provided with a first-class ticket entitling them to ride to a particular place. It does not undertake to furnish victuals and lodging, but lodging alone, we understand."

The court here say, however, that, even if victuals were furnished, it would not alter the result of the decision, as this is merely one element of distinction among many. Again, the court say:

"The innkeeper is obliged to receive and care for the goods and property of the traveler which he may choose to take with him upon the journey. Appellant does not receive pay for, nor undertake to care for, any property or goods whatever, and notoriously refuses to do so. The custody of the goods of the traveler is not, as in the case of the innkeeper, accessory to the principal contract to feed, lodge, and accommodate a guest for a suitable reward, because no such contract is made."

Further distinction is made with regard to the traveler's necessity for accepting these extra accommodations, and thereby attempting a transfer to the sleeping-car company of liability for a loss of baggage, custody of which would have been assumed by the carrier, had control over same been ceded to it; and again it is said that the sleeping-car company is not bound to furnish these accommodations, the service not being made mandatory by the law, as in the case of an innkeeper. In the Welch Case a further distinction was noted with regard to the innkeeper's lien.

The courts being unanimous, as shown above, in enunciating the law with regard to these companies, it becomes important to note the adjudications bearing upon the responsibility of carriers by water in the aspect considered. Here the decisions in the various states are in marked conflict, yet, in this state, harmony is found where different courts have had occasion to rule upon the question. In Crozier v. Steamboat Co., supra, the supreme court held that a steamboat company was liable for the loss of personal effects of ordinary value (including money) as insurer, when the same were taken from the stateroom of a passenger during the night, the decision proceeding upon substantially the same lines as were followed in the early cases decided in this court; and, as remarked above, we have not found that the rule has been questioned by later adjudication. Without the state, a different view has in many instances obtained. The Crystal Palace v. Vanderpool, 16 B. Mon. 302; Abbott v. Bradstreet, 55 Me. 530; Clark v. Burns, 118 Mass. 276; The R. E. Lee, 2 Abb. (U. S.) 49, Fed. Cas. No. 11,690. In The Crystal Palace v. Vanderpool, supra (decided in 1855), it was held that the carrier was not so chargeable, the decision being based upon a lack of precedent for applying the rule of an innkeeper's liability to the plaintiff in error. The court, however, expressed the opinion that there might be many good reasons for applying such a rule to these carriers, but inclined to the view that it was a matter to be regulated by statute. So, again, in 1868, the court held, in the case of Abbott v. Bradstreet, supra, that the steamboat owners were

not liable for such a loss as innkeepers, upon the ground, merely, that no authority in favor of applying such a rule of liability had been found; and the superior court of Massachusetts, in 1875, enunciated the same doctrine upon the authority of the two cases last cited. Clark v. Burns, supra. On the other hand, the supreme court of Wisconsin in 1873 lent approval to the views expressed in Mudgett v. Steamboat Co., Macklin v. Steamboat Co., and Gore v. Transportation Co., while holding that, where the door of the state-room was not provided with a lock, the room could not be considered as a place designated for the deposit of personal effects, and that in such a case the carrier was not liable, prima facie, without proof of its negligence. Gleason v. Transportation Co., 32 Wis. 85. In Mc-Kee v. Owen, 15 Mich. 115, direct approval was given to the rule as laid down by this court in Mudgett v. Steamboat Co., in a carefully considered opinion devoted to a discussion of the duties and liabilities of these carriers by water. In the case of The R. E. Lee, supra, this rule of liability was not approved, but that authority did not alter the court's favorable view of our earlier cases in Gleason v. Transportation Co., supra.

From the foregoing it will be seen that the same unanimity with which the courts have adopted the rule, now approved by the court of appeals, with regard to sleeping-car companies, has not obtained in cases where the liability of a carrier by water has been considered (see note, Henderson v. Railroad Co., 20 Fed. 433); and it appears that in this state, apart from the cases in this court upon the subject, the strict rule referred to was early applied to steamboat companies (Crozier v. Steamboat Co.), and its application denied in the case of a sleeping-car company within a few years later (Welch v. Car Co.). Some instances of distinction pointed out by the courts when refusing to apply the innkeeper's rule to sleeping-car companies may be regarded as applicable to the class of carriers whose liability is now considered, but, in other of these instances, the analogy of the latter to innkeepers strongly obtains; and it is in view of these elements that the rule has been thus extended by the courts. Attention should be directed to the fact that the steamboat company is actually the carrier (see Mudgett v. Steamboat Co.), providing sleeping accommodations as an incident, in practical effect, to the main contract of carriage, instead of merely furnishing special facilities to parties contracting with an independent carrier for their transportation. Thus the character of a "traveling inn" (Macklin v. Steamboat Co., supra) is, with regard to liability for loss of baggage or personal effects, borne out strongly in the case of these carriers, where, in one essential particular, it fails when sought to be applied to the sleeping-car companies; for the steamboat company, as carrier, is charged, under its contract with the passenger, to transport such passenger's baggage, and, in other main essentials giving accommodation as an innkeeper, the analogy to the latter's position, with regard to personal effects placed in a designated locked room, appears. This, again, is a possible distinction between the classes of transporters considered, as noted in Gleason v. Transportation Co., supra. What value other distinctions which might be suggested would have, as

bearing upon the question of liability considered, we need not now determine, for, in view of the present aspect of authority in this and other states, stare decisis would require that effect to be given to the rule as heretofore laid down, in the absence of a contrary expression by the court of last resort. That the case of Carpenter v. Railroad Co. may be taken as such an expression is not an authorized assumption, and the rulings of the learned trial judge in this aspect of the case are therefore to be supported.

An examination of the other points relied upon discloses no prejudice to appellant. In the rulings upon evidence and in the instructions to the jury, relative to the amount of money which the plaintiff was justified in carrying upon his journey, the law was followed as laid down by the authorities (Merrill v. Grinnell, 30 N. Y. 594, 609; Carpenter v. Railroad Co., supra); and so with regard to instructions bearing upon the effect of the notice claimed by defendant to have been placed in the plaintiff's stateroom, and which plaintiff denied having seen (Macklin v. Steamboat Co., supra; Hollister v. Nowlan, 19 Wend. 241). In ruling upon a question as to what watch was kept upon the boat during the night, the court said, addressing counsel:

"I think I shall have to charge, in accordance with the decisions of this court, that the responsibility is that of a hotel keeper, and that the mere fact of the loss would make the defendant liable to pay for it, unless the jury are convinced from the evidence that it arose through the negligence of the plaintiff. Defendant's Counsel: I except to that. The Court: I am only stating now what I think I must do under the decisions."

Appellant now claims that the use of the word "convince" might well have misled the jury in fixing a standard by which they were to weigh the evidence; and there would, indeed, be force in the contention had the jury been actually so charged, under a proper objection. But this remark was addressed to counsel in the course of argument, at some time before the case was closed, and was entirely unconnected with the charge itself, wherein the jury were most fairly instructed upon this question of plaintiff's contributory negligence. Moreover, were this statement to be in any way construed as an instruction, the exception was obviously too general in character to present error in this choice of a word. "When it is intended to except to a specific proposition, or to particular remarks of a judge in his charge to the jury, the counsel making the exception should put his finger on the proposition clearly and distinctly, beyond any question, and employ language entirely plain, so that there can be no doubt as to the real character of the exception, or as to what was actually intended. This is essential to enable the judge to correct, modify, or change the language used, if he deems it proper, and to prevent any misconception or misapprehension as to what portion of the charge the exception was intended to apply." McGinley v. Insurance Co., 77 N. Y. 497. See Walsh v. Mead, 8 Hun, 387, 394. There was sufficient evidence in the case to justify a submission of the question of plaintiff's contributory negligence to the jury, and the verdict is to be supported. No further points are found which would require discussion. Judgment affirmed, with costs.